# EXHIBIT 1

| | |
|---|---|
| GEOFFREY V. WHITE (SBN. 068012)<br>LAW OFFICE OF GEOFFREY V. WHITE<br>21-C Orinda Way #324<br>Orinda, California 94563<br>Telephone: (415) 373-8279<br>Facsimile: (415) 484-7692<br>Email: gvwhite@sprynet.com<br><br>THOMAS O. SINCLAIR (*Adm. pro hac vice*)<br>M. CLAYBORN WILLIAMS (*Adm. pro hac vice*)<br>SINCLAIRWILLIAMS LLC<br>2100A Southbridge Pkwy, Suite 336<br>Birmingham, Alabama 35209<br>Telephone: 205.868.0818<br>Facsimile: 205.868.0894<br>Email: tos@sinclairwilliams.com<br>        mcw@sinclairwilliams.com<br><br>CLASS COUNSEL | WILLIAM D. FRUMKIN (*Adm. pro hac vice*)<br>ELIZABETH E. HUNTER (*Adm. pro hac vice*)<br>FRUMKIN & HUNTER LLP<br>1025 Westchester Avenue, Suite 309<br>White Plains, NY 10604<br>Telephone: (914) 468-6096<br>Facsimile: (914) 468-6099<br>Email: wfrumkin@frumkinhunter.com<br>        ehunter@frumkinhunter.com<br><br>JUDITH L. SPANIER (*Adm. pro hac vice*)<br>NANCY KABOOLIAN (*pro hac vice to be filed*)<br>ABBEY SPANIER LLP<br>212 Ease 39th Street<br>New York, NY 10016<br>Telephone: (212) 889-3700<br>Facsimile: (212) 684-5191<br>Email: jspanier@abbeyspanier.com<br>        nkaboolian@abbeyspanier.com |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUAN M. REYES, SALVATORE TAGLIARENI, ANGEL DE LA CRUZ, ANTONIO MEROLLA, SMAIL MUSOVIC, TESFAYE GHEBREMEDHIN, PHILIP ROGERS, ALMOND REID, CARMELO CALABRO, RUSSELL NEUBERT, and JOHN WILLIAMS**, individually and as representatives on behalf of a class of similarly situated persons,<br><br>            Plaintiffs,<br>    v.<br><br>**BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND; and STEVEN BERTELLI, DAVID B. DURKEE, JETHRO A. HEAD, ART MONTMINY, ROBERT OAKLEY, JAMES RIVERS, RANDY D. ROARK, BARBARA BRASIER, TRAVIS CLEMENS, JON MCPHERSON, LOU MINELLA, DOUG RUYGROK, and JOHN WAGNER,** in their official capacities as Trustees,<br><br>            Defendants. | Case No.  3:14-cv-5596-JST<br><br><br>**DECLARATION OF CLAUDE POULIN** |

DECLARATION OF CLAUDE POULIN
Case No. 3:14-cv-5596-JST

### CLAUDE POULIN, F.S.A, M.A.A.A., E.A

I, Claude Poulin, am over 21 years of age and based on personal knowledge, state as follows:

1. I am an Enrolled Actuary under ERISA, a Fellow in the Society of Actuaries, and a member of the American Academy of Actuaries. I have over 30 years of experience in designing, administering, and reviewing defined benefit pension plans, including providing advice to employers, unions, governments, employees and their representatives. My Curriculum Vitae is attached as Exhibit A.

2. I have been an actuarial consultant to the AARP, the EEOC, the Internal Revenue Service as well as the CWA, the IBEW and the UAW. For over twenty-five years, I have been serving as the Actuarial Trustee of the Connecticut State Employees Retirement Commission.

3. At the time the Employee Retirement Income Security Act (ERISA) was enacted in 1974, I was the Senior Actuary for the United Automobile Workers ("UAW"). In that capacity, I was responsible for the review and compliance under ERISA of approximately 3,000 pension plans the UAW had negotiated. I testified several times before Congressional committees of both the U.S. House and Senate on matters related to ERISA.

4. I have attached as Exhibit B a list of the cases in which I have testified as an expert at trial or at deposition within the last four or five years.

5. I have been retained in this matter to comment on the actuarial status certification as of January 1, 2012 of the Bakery and Confectionery Union and Industry International Pension Fund.

6. In order to perform this analysis, I have reviewed copies of the documents listed on Exhibit C.

7. I am compensated at the rate of $475 per hour.

8. Bakery and Confectionery Union and Industry International Pension Fund (the Fund) is a multiemployer defined benefit pension plan governed by ERISA. Under the terms of "Plan A" of the Fund, a participant with at least twenty-five years of service is eligible to retire with a normal pension at age 65. Participants can elect to receive their Plan A pension benefits as early as age 55, but at an actuarially reduced level, in recognition of the fact they will be receiving a longer stream of payments of payments over their lifetimes. Certain employers agreed to offer participants a subsidized early retirement benefit, i.e., the age 65 normal pension, without any actuarial reduction if certain conditions were met. Two of these additional plans were, and are, Plan G (the "Golden 80 Plan") and Plan C (the "Golden 90 Plan"). Under the Golden 80 Plan, when the sum of a participant's age and service equals 80 or more, the participant is entitled to retire at the full age 65 normal pension benefit level while under the Golden 90 Plan, when the sum of a participant's age and service equals 90 or more, the participant is entitled to retire at the full age 65 normal pension benefit level. Until 2010, participants who left employment before attaining the full 80 or 90 points were allowed to "grow into" or "age into" the Golden 80 or Golden 90 benefits, simply by virtue of being older.

9. On July 1, 2010, the Fund was amended to eliminate the ability of participants terminating employment without the requisite number of points to "age into" the Golden 80 or Golden 90 benefits.

10. The anti-cutback rule found in section 204(g) of ERISA was amended in 1984 to include early retirement subsidies – such as those found in the Golden 80 or Golden 90 plans – in the list of protected "accrued benefits". Section 204(g) essentially says that an amendment to a pension plan may not result in the elimination or reduction of an "accrued benefit". Therefore, the Fund was sued on the basis that the July 1, 2010 amendment violated section 204(g) of ERISA. The District Court agreed with plaintiffs in a decision delivered on June 6, 2012.

11. Under the Pension Protection Act of 2006, the actuary of a multiemployer plan must certify annually whether or not the plan is in endangered status for the plan year and whether or not the plan is or will be in critical status for the plan year. Based on the actuary's calculations, the plan will be categorized as being in critical status (Red Zone), in endangered status (Yellow Zone), or neither (Green Zone). If the plan is in critical status, the multiemployer plan must adopt a rehabilitation plan. On March 30, 2012, the actuary of the Fund certified that the Fund was in critical status as of January 1, 2012 and in November 2012, a rehabilitation plan that eliminated the "aging into" the Golden 80 or Golden 90 benefits – much like the July 1, 2010 amendment – was adopted by the Fund.

12. A multiemployer plan is deemed to be in critical status for a plan year if it meets one or more sets of criteria spelled out in section 432(b)(2) of the Internal Revenue Code.

13. The Fund's actuary determined that the Fund met the following set of conditions in 2012:

(i) (I) the plan's normal cost plus interest for the current plan year on the amount of unfunded benefit liabilities under the plan as of the last date of the preceding plan year, exceeds

(II) the present value of the reasonably anticipated employer and employee contributions for the current plan year,

(ii) the present value, as of the beginning of the current plan year, of nonforfeitable benefits of inactive participants is greater than the present value of nonforfeitable benefits of active participants, and

(iii) the plan has an accumulated funding deficiency for the current plan year, or is projected to have such a deficiency for any of the 4 succeeding plan years.

14. The Fund's actuary changed a number of actuarial assumptions in 2012, as follows: the long-term rate of return on investments was reduced from 7.5% to 6.5%, the mortality assumption was changed "to reflect future mortality improvements" and the annual administrative expense assumption was also increased "to better reflect past experience and future expectations". (See 2012 Actuarial Valuation Report, page 1-2). Each one of these revisions resulted in an increase in the Fund's liabilities. The actuary commented in the 2012 report that the "experience in recent years has shown a trend of higher per capita hours", increasing by nearly 5% from 1,961 hours in 2005 to 2,057 hours in 2011. The actuary did not revise this particular assumption, which – like the other changes in assumptions – would have better reflected recent experience. If this favorable experience had been recognized, it would have had a positive impact – unlike the other assumption changes – on the projected funding status of the plan.

**15.** In Exhibit III "Funding Standard Account Projection" of his March 30, 2012 Actuarial Status Certification, the Fund's actuary shows a table presenting the Funding Standard Account Projection for the plan years beginning January 1, 2011 through 2018. The table indicates a funding deficiency (a negative credit balance) of $21,159,966 by the end of 2016. Since this is less than five years from January 1, 2012, the actuary concludes that the Fund is in critical status (Red Zone) for plan year 2012.

16. In analyzing the 2012 Funding Standard Account Projection, I noted a number of inconsistencies within the table itself and in comparison with other documents I reviewed. The table shows the amount of interest to the end of the plan year for the various items that will increase or decrease the credit balance in effect at the beginning of 2012. One would assume that since administrative expenses and employer contributions are uniformly distributed during the year, the interest rate on these two items would in the same range. However, the interest rate

on the administrative expenses is 6.5% while the interest rate on the employer contributions is only 2.9%. This is tantamount to assuming that all administrative expenses occur on January 1 of a given year while employer contributions on average are paid in August. The same interest rates are used for these two items throughout the projection period. The discrepancy between these two rates tends to reduce the credit balance more rapidly than if they were in the same range.

17.  The following point is more significant: the amount shown for Expected Contributions in the 2012 Funding Standard Account Projection is $132,489,882 and this amount is reduced by over 2% in all future projection years. However, in the 2012 actuarial valuation report, Chart 18 (Page 2-18) shows projected employer contributions of $138,682,288 for the year, an amount 4.7% higher than in the Actuarial Status Certification for the same year. Chart 18 also shows an average rate per hour of $2.72 for 2012 declining from $2.7955 in 2011 while the Actuarial Status Certification shows an average contribution rate of $2.69 in 2012 declining from $2.72.

I reviewed the Fund's Financial Statements for plan years 2011, 2012 and 2013 in order to determine more accurate numbers for contributions made in those years. I was astonished to find that the contributions for 2012 amounted to $167,459,148, and $173,901,691 for 2013. To be sure, the difference in contributions in these documents may be partially explained by the increased employer contributions called for by the 2012 rehabilitation plan. But not totally: the rehabilitation plan did not result in employer contribution increases even close to 26% in 2012 and 34% in 2013. If an employer withdraws from participation in a multiemployer plan and the plan has unfunded liabilities allocable to the employer, the plan will assess withdrawal liability and collect it from the employer. It also appears that the Actuarial Status Certifications did not take into account the withdrawal liability contributions that would have substantially reduced the

funding deficiencies nor did they consider employer contribution rate increases, if any, before the increases stipulated in the rehabilitation plan.

18. I concluded from analyzing the various documents mentioned above that the 2012 Actuarial Status Certification significantly underestimated the amount of employer contributions. I, therefore, revised the projection table by adding half of the difference between the contribution amount in the Actuarial Status Certification and the corresponding amount in the Fund's Financial Statements for 2012, while keeping the other numbers as they are in the 2012 Actuarial Status Certification. The revised contrition amount for 2012 becomes $149,974,515. The results presented in attached Exhibit D show that with this revision alone, the Fund would have experienced a positive credit balance until the end of 2017.

19. It is obviously as a result of the changes in actuarial assumptions in 2012, changes that all had for effect to increase the Fund's liabilities – while the plan's positive experience such as the increase in the number of hours was ignored – that the 2012 Actuarial Status Certification showed a negative credit balance at the end of 2016. With the revised actuarial assumptions in 2012, the present value of vested accumulated benefits in that year increased by an amount exceeding $1 billion, i.e., more than 15% greater than the present value of these benefits in 2011. The funded percentage of these benefits decreased abruptly from 83.6% in 2011 to only 66.9% in 2012 (See 2012 actuarial valuation report, page 2-27).

20. In my opinion, for the reasons mentioned above and for the fact that employer contributions were underestimated for plan year 2012 and possibly later years, the Bakery and Confectionery Union and Industry International Pension Fund's 2012 Actuarial Status Certification was flawed.

1  I declare under penalty of perjury that the foregoing is true to the best of my knowledge.

2

3  Date: November 3, 2015                    _____
4                                              Claude Poulin

**Exhibit A**

# CURRICULUM VITAE
# OF CLAUDE POULIN

| | |
|---|---|
| EDUCATION: | Fellow of the Society of Actuaries, Chicago |
| | Laval University, School of Business Administration<br>Quebec City, Advanced Degree in Actuarial Science |
| | University of Montreal, B.A., Mathematics |
| EMPLOYMENT:<br>Since 1980 | POULIN ASSOCIATES, INC.<br>9124 John S. Mosby Hwy<br>Upperville, VA 20184<br>(202) 297-9516 |
| | Founder and president of Poulin Associates, Inc., an independent actuarial and employee benefit consulting firm with offices in Upperville, Virginia and Charleston, South Carolina; special expertise as a consultant and actuarial expert witness in pension and welfare benefit cases |
| 1970 to 1980 | UNITED AUTOMOBILE WORKERS (UAW), Detroit, Michigan |
| | Senior Actuarial Consultant and Assistant Director of the UAW Social Security Department; responsible for monitoring over 3,000 pension and welfare plans for the Union |
| 1966 to 1970 | SUN LIFE ASSURANCE COMPANY, Montreal, Canada |
| | Actuarial Assistant, pensions and group insurance operations |
| PROFESSIONAL CREDENTIALS: | Member of the American Academy of Actuaries |
| | Enrolled Actuary under ERISA |
| | Fellow of the Society of Actuaries |
| | Appointed by the Governor of the State of Connecticut as Actuarial Trustee of the Connecticut State Employees' Retirement Commission |

**Exhibit A**

| | |
|---|---|
| PROFESSIONAL CREDENTIALS (continued) | Member of the 1979 Panel of Actuaries and Economists to the Social Security Advisory Council, members of which were appointed by President Carter. |
| | Member of the Pension Benefit Guaranty Corporation (PBGC) 1977 Panel on Contingent Employer Liability Insurance. |
| | Member of the 1977 Task Force of the Financial Accounting Standards Board (FASB) on Accounting and Reporting for Employee Benefit Plans. |
| | Member of the Bureau of National Affairs (BNA) Pension Reporter Advisory Board (1981-1987). |
| | Testified before Committees of the United States House and Senate on ERISA and related matters. |
| | Testified before several Canadian Commissions on pension reform. |
| | Radio and television commentator on economic and social affairs. |

**Exhibit B**

# Claude Poulin
# Prior Expert Testimony

<u>Robert J. Zebrowski, et al. v. Evonik Degussa Corporation Administrative Committee, et al.</u> Civil Action No. 10-542 filed in the United States District Court for the Eastern District of Pennsylvania.

<u>Janice C. Amara, et al. v. CIGNA Corp. and CIGNA Pension Plan</u>, Civil Action No. 3:01-CV-2361(MRK) in the United States District Court for the District of Connecticut.

<u>Jamal Kifafi, et al. v. Hilton Hotels Retirement Plan</u>, Civil Action No. 98-1517, filed in the United States District Court for the District of Columbia.

<u>Carol Tibbles v. Teachers Retirement System of Georgia, et al.</u>, Civil Action File No. 2012CV223341 in the Superior Court of Fulton County State of Georgia

<u>Denise M. Clark v. Feder Semo and Bard, P.C., et al.,</u> Civil Action No. 07-470 (JDB) in the United States District Court for the District of Columbia.

<u>Joseph Mezyk, et al. v. U.S. Bank Pension Plan, et al.,</u> Civil Action Nos. 3:09-CV-384-JPG-DGW – 3:10-CV-696-JPG-DGW in the United States District Court Southern District of Illinois.

<u>Wade E. Jensen, et al. v. Solvay Chemicals, Inc</u>., Civil Action No. 06 CV 273 in the United States District Court for the District of Wyoming.

<u>James Stephens, et al. v. US Airways, Inc., et al</u>., Case No. 07-1264 in the United States District Court for the District of Columbia.

<u>Charles D. Skinner, et al. v. Northrop Grumman Retirement Plan B, et al.</u>, Case No. 07-CV-3923 (JTLx) in the United States District Court for the Central District of California.

<u>Geoffrey Moyle, et al., v. Liberty Mutual Retirement Benefit Plan, et al.,</u> Case No. 10-CV-2690-W(WVG) in the United States District Court for the Southern District of California.

Exhibit C

# Claude Poulin

# Documents Reviewed

- Plaintiffs' First Amended Class Action Complaint
- Defendants' Notice of Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c); and Memorandum of Points and Authorities in support thereof
- Bakery and Confectionery Union and Industry International Pension Fund Actuarial Valuation and Review as of January 1, 2012
- Bakery and Confectionery Union and Industry International Pension Fund January 1, 2012 Actuarial Valuation Results
- Declaration of John Beck in support of Defendants' Motion for Judgment on the Pleadings
- Internal Revenue Code Section 432
- Bakery and Confectionery Union and Industry International Pension Fund Actuarial Certifications of Plan Status as of  January 1, 2012, January 1, 2013, January 1, 2014 and January 1, 2015 under Internal Revenue Code Section 432
- Notice of Rehabilitation Plan Adoption dated November 14, 2012
- Bakery and Confectionery Union and Industry International Pension Fund Financial Statements for the years ended December 31, 2011, 2012 and 2013
- United States District Judge Vincent L. Briccetti's June 6, 2012 Decision