UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUAN M. REYES, et al.,

Plaintiffs,

v.

BAKERY AND CONFECTIONERY
UNION AND INDUSTRY
INTERNATIONAL PENSION FUND, et al.,

Defendants.

Case No.  14-cv-05596-JST

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
JUDGMENT ON THE PLEADINGS**

ECF No. 73

Before the Court is Defendants' Motion for Judgment on the Pleadings.  ECF No. 73.
Plaintiffs oppose the motion.  ECF No. 79.  The Court will grant the motion in part and deny it in
part.

I.      BACKGROUND

This is a putative class action under the Employee Retirement Income Security Act of
1974 ("ERISA") and the Pension Protection Act of 2006 ("PPA"), challenging an amendment to
the "Golden 80" and "Golden 90" adjustable benefits by the Bakery and Confectionary Union and
Industry International Pension Fund (the "Pension Fund"), a multi-employer defined benefit
pension plan.  First Amended Complaint ("FAC"), ECF No. 44 ¶ 1.

This is the second time that the Pension Fund has attempted to implement such an
amendment.  The Pension Fund's first attempt, in July 2010, was invalidated by a district court in
New York, which found that the amendment violated ERISA's "anti-cutback rule."  See In re
Bakery and Confectionery Union and Indus. Int'l Pension Fund Pension Plan, 865 F. Supp. 2d
469, 474 (S.D.N.Y. 2012), aff'd Alcantara v. Bakery and Confectionary Union and Indus. Int'l
Pension Fund Pension Plan, 751 F.3d 71 (2d Cir. 2014).  "With few exceptions, the 'anti-cutback'
rule of [ERISA] prohibits any amendment of a pension plan that would reduce a participant's

'accrued benefit.'"  Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739, 741, 124 S. Ct. 2230, 2234, 159 L. Ed. 2d 46 (2004) (citing 88 Stat. 858, 29 U.S.C. § 1054(g)).

The Pension Fund argues that this second attempt is valid under the PPA's provisions regarding funds that have been certified as being in "critical" status.

**A.  2010 Amendment and New York Case**

Plaintiffs, and the other class members, are participants in the Pension Fund.  FAC ¶ 4. The Pension Fund covers tens of thousands of participants throughout the U.S.  Id. ¶ 26. Defendants include the Pension Fund, its Board of Trustees, and individually named Trustees.  Id. ¶¶ 15–17.

A participant in the Pension Fund with at least twenty-five years of service is typically eligible to retire with full benefits at age 65.  Certain employers offered participants a subsidized early retirement benefit called the "the Golden 80" and "the Golden 90" plans.  Id. ¶ 29.  Under those plans, a participant was eligible to receive full retirement benefits if her combined age and years of service were equal to 80 or 90.  Id.

The amendments at issue concern a participant's ability to "age into" the Golden 80 and Golden 90 plans.  Id. ¶ 31.  Prior to the amendments, participants could leave their employment before the sum of their age and service equaled 80 or 90 years, but could later "age into" receiving the full benefits when the sum reached 80 or 90.  Id.  For example, a participant could retire at age 58 with 20 years of service, and then begin to receive full benefits two years later under the Golden 80 Plan upon turning 60 (i.e., 60 + 20 = 80).  The amendment at issue in this case eliminated the ability to "age into" the Golden 80 and Golden 90 plans.  Id. ¶¶ 33, 44.

The Pension Fund previously attempted to implement an identical amendment in July 2010.  FAC ¶ 33, 44.  Various participants filed lawsuits in federal court in New York, challenging the amendment on grounds that it violated 29 U.S.C. § 1054(g), ERISA's anti-cutback rule.  Id. ¶ 34.  On June 6, 2012, the New York district court held that the Fund's 2010 amendments violated ERISA's anti-cutback provision and entered judgment against the Fund on November 11, 2012. Id. ¶¶ 42, 45; see also In re Bakery and Confectionery Union, 865 F. Supp. 2d at 475-76.  The Second Circuit affirmed.  Alcantara v. Bakery and Confectionary Union and Indus. Int'l Pension

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Fund Pension Plan, 751 F.3d 71 (2d Cir. 2014).

2      **B.  2012 Amendment**

3        While litigation was still ongoing in the New York case, the Pension Fund's actuary, The

4 Segal Group, certified the Fund as being in "critical status" under the PPA on March 30, 2012.

5 ECF No. 73 at 6.  On April 27, 2012 the Fund sent out a Notice of Critical Status to participants,

6 reporting that there were funding problems and advising that the Fund might adopt a rehabilitation

7 plan that would reduce or eliminate certain benefits.  FAC ¶¶ 38, 39.  The Notice of Critical Status

8 listed the Golden 80 and 90 plans as possible candidates for elimination.  Id. ¶ 39.

9        On November 7, 2012, four days before the New York district court entered judgment, the

10 Fund adopted a Rehabilitation Plan.  Id. ¶ 43.  The Rehabilitation Plan stated, among other things,

11 that participants' ability to age into the Golden 80 and 90 plans would be eliminated as of April

12 30, 2012.  Id. ¶ 44.  The Plan explained that this change was identical to the 2010 amendment

13 except that it would be effective on April 30, 2012 instead of July 1, 2010, as previously proposed.

14 Id.  On November 14, 2012, the Fund issued a notice to employers, union representatives, and

15 participants describing the reductions contained in the Rehabilitation Plan.  Id. ¶ 46.

16        Defendants allege that the new amendment, unlike the 2010 amendment, is valid because it

17 was implemented in accordance with the PPA.  ECF No. 73 at 7.  The PPA was created, in part, to

18 address "the problems associated with underfunded pension plans," and "introduced a number of

19 mechanisms aimed at stabilizing pension plans and ensuring they remain solvent."  Trustees of

20 Local 138 Pension Trust Fund v. F.W. Honerkamp Co., 692 F.3d 127, 130 (2d Cir. 2012).  Among

21 the PPA's provisions are "measures designed to protect and restore multiemployer pension plans

22 in danger of being unable to meet their pension distribution obligations in the near future."  Id.

23 Under the PPA, a pension plan may be certified as "endangered" if it is less than eighty percent

24 funded, or as "critical" if it is less than sixty-five percent funded.  Id.  The PPA assigns the

25 responsibility of certifying the financial status of the fund to the plan's actuary.  29 U.S.C.

26 § 1085(b)(3).  If a fund is designated as being in "critical status," then the fund sponsor must adopt

27 a rehabilitation plan.  Id. at §1085(e)(3).  ERISA's anti-cutback rule, 29 U.S.C. § 1054(g), would

28 typically preclude many benefit changes, but a provision of the PPA provides an exception that

1    permits reductions of "adjustable benefits" when a fund is in critical status.  See 29 U.S.C. 1085

2    (e)(8).  Plaintiffs do not dispute that the "aging into" provision of the Golden 80 and 90 plans is

3    the type of adjustable benefit that can be reduced or diminished under a rehabilitation plan,

4    provided the other requirements of the PPA are met.

5        Plaintiffs filed this action on December 23, 2014.  See ECF No. 1.  In their First Amended

6    Complaint, Plaintiffs make four claims against Defendants: (1) Defendants improperly notified

7    Plaintiffs of the amendment, (2) Defendants were unreasonable in their certification of the Pension

8    Fund as being in a "critical status," (3) Trustees breached their fiduciary duty by certifying the

9    Pension Fund was in a "critical status" when they knew this to be untrue, and (4) Trustees

10   breached their fiduciary duty because the amendment favors some participants over others.  FAC

11   ¶¶ 58–87.  On September 22, 2015, the Court granted an unopposed motion for class certification.

12   ECF No. 72.

13       Defendants now bring this Motion for Judgment on the Pleadings.  ECF No. 73.

14   **II.    LEGAL STANDARD**

15       Defendants' Motion for Judgment on the Pleadings is governed by Federal Rule of Civil

16   Procedure 12(c), which provides, "After pleadings are closed – but early enough not to delay trial

17   – a party may move for judgment on the pleadings."  The standard governing a Rule 12(c) motion

18   is essentially the same as that governing a Rule 12(b)(6) motion.  Dworkin v. Hustler Magazine

19   Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).  A Rule 12(c) motion will only be granted when,

20   viewing the facts as presented in the pleadings in a light most favorable to the plaintiffs, and

21   accepting those facts as true, the moving party is entitled to judgment as a matter of law.  Hoeft v.

22   Tucson Unified School Dist., 967 F.2d 1298, 1301 n.2 (9th Cir. 1992) ("In reviewing the

23   defendants' motions under Fed. R. Civ. P. 12(c), the district court views the facts as presented in

24   the pleadings in the light most favorable to the plaintiffs, accepting as true all the allegations in

25   their complaint and treating as false those allegations in the answer that contradict the plaintiff's

26   allegations.").  "Also, materials properly attached to the pleadings as exhibits may be considered."

27   Wahl v. Am. Sec. Ins. Co., 2010 U.S. Dist. LEXIS 54637, at 7 (N.D. Cal. May 10, 2010) (citing

28   Amfac Mtg. Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 429 (9th Cir. 1978)).  "Mere

United States District Court
Northern District of California

4

conclusory statements in a complaint and 'formulaic recitation[s] of the elements of a cause of action' are not sufficient." <u>Chavez v. United States</u>, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

## III.   ANALYSIS

### A.   Count I: Improper Notice

To institute a rehabilitation plan, a pension fund must follow the procedures and meet the notice requirements prescribed by the PPA. <u>See e.g.</u>, 29 U.S.C. § 1085(b)(3)(D). Plaintiffs here allege that although they were given notice in the April 27, 2012 Notice of Critical Status that benefits *might* be reduced, they were not given notice of *actual* benefit reductions before the reductions went into effect. FAC ¶ 60. Plaintiffs allege that they first received notice regarding the April 30, 2012 amendment in the Rehabilitation Plan notice sent on November 14, 2012, six-and-one-half months after the effective date. FAC ¶¶ 43, 44, 46.

A pension fund must follow five basic steps under the PPA to qualify for the anti-cutback exception. First, every year the plan's actuary must assess and certify the status of the fund. 29 U.S.C. § 1085 (b)(3)(A) ("No later than the 90th day of each plan year of a multiemployer plan, the plan actuary shall certify [the fund's status] to the Secretary of the Treasure and to the plan sponsor."). Second, if the actuary finds the plan is in a "critical status," the plan sponsor must send out a notice to the plan participants detailing the fund's status and possible benefit reductions within 30 days of the actuary's certification. 29 U.S.C. § 1085 (b)(3)(D) ("In any case in which it is certified . . . that a multiemployer plan is or will be in endangered or critical status . . . the plan sponsor shall, not later than 30 days after the date of certification, provide notification of the endangered or critical status to the participants."). Third, a rehabilitation plan must be adopted no more than 240 days following the actuary's certification of critical status. 29 U.S.C. § 1085 (e)(1)(A) ("In any case in which a multiemployer plan is in critical status for a plan year, the sponsor . . . shall adopt a rehabilitation plan no later than 240 days following the required date for the actuarial certification of critical status."). Fourth, within 30 days of adopting a rehabilitation plan, the plan sponsor must notify the bargaining parties. 29 U.S.C. § 1085 (e)(1)(B) ("Within 30 days after the adoption of the rehabilitation plan [the plan sponsor] shall provide to the bargaining

1    parties 1 or more schedules showing revised benefit structures.").

2          Fifth, and most relevant here, participants must receive notice of any benefit reductions at

3    least 30 days before the effective date of those reductions, or the reductions are not effective.  29

4    U.S.C. § 1085 (e)(8)(C)(i) ("No reduction may be made to adjustable benefits under subparagraph

5    (A) unless notice of such reduction has been given at least 30 days before the general effective

6    date of such reduction.").  That notice must provide "sufficient information to enable participants

7    and beneficiaries to understand the effect of any reduction on their benefits, including an estimate

8    (or an annual or monthly basis) of any affected adjustable benefit that a participant or beneficiary

9    would otherwise have been eligible for as of the general effective date."  29 U.S.C. §

10   1085(e)(8)(C)(ii).

11         It is the final step that Plaintiffs allege Defendants failed to follow.  Plaintiffs' argument is

12   straightforward:  The Rehabilitation Plan was adopted on November 7, 2012, and set the effective

13   date for eliminating the ability to age into the Golden 80 and Golden 90 plans as April 30, 2012.

14   FAC ¶ 44.  Yet notice that these benefits were being eliminated was not sent 30 days before April

15   30, 2012, as it should have been, but rather on November 14, 2012, approximately six months

16   *after* the stated effective date.  Id.at ¶ 46.  Therefore, the amendment failed to follow the 30-day

17   notice requirement set out by 29 U.S.C. § 1085(e)(8)(C).  See Schwarz v. UFCW-Northern Cal.,

18   Emplr. Joint Pension Plan, No. C13-00977 LB, 2014 WL 186647 at *9 (N.D. Cal. Jan. 16, 2014)

19   (approving April 2011 notice of changes going into effect in January 2012); McGuigan v. Local

20   295/Local 851 I.B.T. Employer Group Pension Trust Fund, No. 11-CV-2004(JG)(MDG), 2011

21   WL 3421318 at *6 (E.D.N.Y. Aug. 4, 2011) (approving June 2009 notice for July 2009 changes). [1]

22         Defendants offer two arguments in response.  First, they argue that "[i]n two separate

23   places, PPA provides that a rehabilitation plan is allowed to reduce the adjustable benefits of

24   participants with benefit commencement dates on or after the date of the initial notice of critical

25   status."  ECF No. 84 at 8.  Defendants assert that their initial notice on April 27, 2012, of the

26

27   _____

[1] The parties do not appear to dispute that April 30, as the date that the changes went into effect,
28   functions as the "general effective date" for the purposes of the PPA's notice requirement.  See
     also Schwarz, 2014 WL 186647 at *9; McGuigan, 2011 WL 3421318 at *6.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Fund's certification of being in "critical" status should be sufficient to allow for the elimination of

2    benefits effective on April 30, 2012, because this matches with Congress's intent underlying the

3    PPA.  Id. at 9.  The Court rejects this interpretation for the simple reason that it contradicts the

4    express language of the PPA.  29 U.S.C. § 1085(e)(8)(C)(i) ("No reduction may be made to

5    adjustable benefits under subparagraph (A) unless notice of such reduction has been given at least

6    30 days before the general effective date of such reduction.").

7        Second, Defendants assert that because they did provide notice of the changes on

8    November 14, 2012, they ought to be entitled to implement those changes as of December 14,

9    2012, pursuant to 29 U.S.C. § 1085(e)(8)(C).  Since Plaintiffs do not specifically allege that any of

10   them became eligible to receive their benefits before December 14, 2012, Defendants argue, notice

11   was still effective.  ECF No. 84 at 10.  This argument also is unavailing.  It ignores the plain

12   command of the PPA that any notice contain an accurate reference to the general effective date of

13   any reduction.  29 U.S.C. § 1085(e)(8)(C)(ii) (requiring that a notice provide "sufficient

14   information" to participants as to how their benefits would be affected "as of the general effective

15   date").

16       Accordingly, the motion for judgment on Count I is denied.[2]

17   **B.      Count II: Improper Certification of Fund**

18       The PPA designates the plan's actuary as the sole entity in charge of certifying the status

19   of the fund.  29 U.S.C. § 1085 (b)(3).  The PPA requires that the actuary's projections "be based

20   on reasonable actuarial estimates, assumptions, and methods that, except as provided in clause

21   (iii), offer the actuary's best estimate of anticipated experience under the plan."  29 U.S.C. § 1085

22   (b)(3)(B)(i).

23       The FAC's second count states that the certification process utilized here did not meet the

24   requirements of section 1085(b).  It alleges that the assumptions the actuary used to certify the

25   Fund as critical were not reasonable.  FAC ¶ 68.  It also alleges that the actuary's report found that

26   a funding deficiency would occur over a longer period than is set forth in the PPA for the

27

28   [2] In light of this ruling, the Court need not reach Plaintiffs' further allegations regarding the
     "contingency" of Defendants' notices to the plan's participants.

7

1  determination of critical status. Id. at ¶ 69.

2  The Court will grant judgment to Defendants on this count for two reasons.  First,

3  Plaintiffs have failed to plausibly allege with specificity that any part of the certification process

4  was unreasonable or that it did not meet the requirements of section 1085(b).  Second, while

5  Plaintiffs have named only the Fund and the Fund's Trustees as Defendants, the PPA assigns

6  responsibility for the certification solely to the actuary, not to funds or their trustees.

7  **1. Plaintiff's Allegations**

8  Plaintiffs' sole allegations in regards to the unreasonable nature of the Fund's certification

9  are that "the assumptions regarding the interest rate, mortality, and projected hours[] [were] not

10  reasonable" and that this led to an "undervaluation" of the Fund.  FAC ¶ 68.  Plaintiffs do not

11  specify why any of these assumptions were unreasonable.  As a result, the allegations contain only

12  legal conclusions and are not sufficient to plead a claim.  Starr v. Baca, 652 F.3d 1202, 1216 (9th

13  Cir. 2011) ("[T]o be entitled to the presumption of truth, allegations in a complaint or

14  counterclaim may not simply recite the elements of a cause of action.").  In later briefing,

15  Plaintiffs discuss and attach a report by a different actuary who disagrees with some of the

16  assumptions made by the Pension Fund's actuary.  ECF No. 73 at 10–11.  However, because this

17  information is neither contained in the complaint nor properly attached to the complaint as an

18  exhibit, the Court does not consider it.  See Wahl v. Am. Sec. Ins. Co., No. C 08-00555 RS, 2010

19  WL 1881126 at *3 (N.D. Cal. May 10, 2010).

20  Plaintiffs also argue that the time frame used to designate the Fund as critical was

21  calculated incorrectly.  Under the PPA, a plan may be designated as critical when it is projected to

22  have an accumulated funding deficiency for any of the four succeeding plan years.  29 U.S.C. §

23  1085(b)(2)(C)(iii).  This brings the relevant time frame to five years: the current plan year and the

24  four following years.  Plaintiffs' FAC alleges that the actuary first found a funding deficiency in

25  2017, which they believed exceeded the time frame articulated in the statute.  FAC ¶ 69.  When

26  Defendants explained that the report actually found a deficiency in 2016, not 2017, ECF No. 73 at

27  16, Plaintiffs acknowledged this, but argued that the report was based on information from 2011,

28  and so a deficiency in 2016 still did not fall within the five-year time frame.  ECF No. 79 at 12.

United States District Court
Northern District of California

1       Plaintiffs' math is incorrect.  The PPA allows a plan actuary to consider the actuarial

2   valuation for the preceding plan year in making projections for the following year.  29 U.S.C.

3   § 1085 (b)(3)(B)(i)(II).  In accordance with this, the actuary's report used data from 2011 to make

4   projections from 2012 through 2016.[3]  It therefore complies with the five year time frame

5   contained in the PPA.  See ECF No. 73, Exh. 2 ("2012 Certification").[4]

6              **2.  Liability of Defendants Under the PPA**

7       Plaintiffs have chosen to name both the Fund and the Fund's trustees as Defendants, but

8   have not named the Fund's actuary, The Segal Group.  As noted above, however, the PPA

9   designates the actuary as the sole party responsible for the certification process.  29 U.S.C.

10   § 1085(b)(3).  Defendants argue that judgment should be granted in their favor because they are

11   not liable for an allegedly unreasonable certification of critical status under the PPA.  ECF No. 73

12   at 17-18.

13       Plaintiffs argue that preventing them from challenging the certification of critical status "is

14   contrary to ERISA's purpose of 'protecting participants in employee benefits plans.'"  ECF No. 79

15   at 18.  They state that "[t]he effect of such a ruling would be to insulate pensions from judicial

16   review of defective, manipulated, or fraudulent critical status certifications being used to justify

17   denial of retirement benefits."  Id.

18       The Court is not persuaded by this argument.  As an initial matter, even if Plaintiffs were

19   correct that they lacked a remedy for the alleged defects in the certification process, that would not

20   give the Court the right – or even a good public policy justification – to create such a remedy

21   judicially.  That task is properly left to Congress.  Secondarily, Plaintiffs are incorrect that

22   "defective, manipulated, or fraudulent critical status certifications" are insulated from judicial

23   review.  Such actuarial certifications can be challenged as professional malpractice under state

24   law.  See, e.g. Mertens v. Kaiser Steel Ret. Plan, 829 F. Supp. 1158, 1163 (N.D. Cal. 1992);

25   ——————————————

26  [3] Plaintiffs' reply seems almost to concede this point, stating that "the Fund's accumulated funding deficiency would have to occur no later than 2016," but also noting that "the Funding Standard

27  Account Projection shows a negative credit balance at the end of the 2016 year."  ECF No. 79 at 17.

28  [4] Because the 2012 certification report is repeatedly mentioned in the complaint, the Court may properly consider it.  See Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).

1    Richards v. Union Labor Life Ins. Co., 804 F. Supp. 1101, 1103-05 (D. Minn. 1992); see also

2    Bourns, Inc. v. KPMG Peat Marwick, 876 F. Supp. 1116, 1122 (C.D. Cal. 1994) ("A number of

3    courts have held that ERISA does not preempt state law malpractice claims against plan auditors

4    or actuaries.").

5            Finally, as Plaintiffs themselves note, see ECF No. 79 at 18-19, they do in fact possess

6    potential claims against Defendants under the PPA. They may allege that Defendants failed in

7    their duty to provide information to the actuary for their certification determination, see 29 U.S.C.

8    1085(b)(3)(B)(iii) (providing that the certification "shall be based on information provided by the

9    plan sponsor, which shall act reasonably and in good faith.").  Moreover, Plaintiffs also contend

10   that the Plan's fiduciaries "have an automatic fiduciary duty" under ERISA generally, "in

11   selecting, monitoring, and overseeing the actuary, and reviewing the actuary's work before taking

12   action upon it."  ECF 79 at 21.

13           The problem therefore does not appear to be that the certification process is "insulated"

14   from judicial review, but more simply that Plaintiffs have not offered allegations as to how the

15   Fund and its trustees — rather than the actuaries — violated any kind of duty or statutory

16   requirement in the certification process.  They do not, for example, allege facts that suggest

17   Defendants acted unreasonably or in bad faith in providing certain information to the actuaries.

18   Nor do they allege that the Defendants failed in some way or form to oversee the actuaries' work.

19           Accordingly, the Court grants Defendant's motion for judgment on Count II.

20   C.      Count III: Breach of Fiduciary Duty for Certifying Fund's Critical Status

21           The allegations in Count III are substantially identical to those in Count II, except that

22   Count III specifies that the plan's trustees violated their fiduciary duty by wrongly certifying the

23   Pension Fund's critical status.  FAC ¶ 77.  As explained above, Plaintiffs fail to plausibly allege

24   that the certification was unreasonable or otherwise invalid.  While Plaintiffs are correct that they

25   are "not required to plead a breach of fiduciary duty with specificity," ECF No. 79 at 21, there

26   must be more than these bare allegations to support a plausible claim.  The Court will enter

27   judgment in favor of Defendants on Count III of Plaintiffs' FAC.

28

United States District Court
Northern District of California

1

### D.      Count IV: Breach of Fiduciary Duty for Favoring Certain Participants

2        Plaintiffs' final count alleges that the trustee Defendants breached their fiduciary duty

3   when they implemented the rehabilitation plan.  FAC ¶¶ 84–85.  Plaintiffs' argument has two

4   parts: (1) the plan sponsors were acting in a fiduciary capacity when adopting the Rehabilitation

5   Plan and (2) the change to the Golden 80 and Golden 90 plans was a breach of fiduciary duty

6   because it impermissibly favored currently working employees over those no longer in covered

7   employment.  Id.

8        Plaintiffs and Defendants disagree about whether the Trustees were acting in the capacity

9   of fiduciaries when amending the plan.  See ECF Nos. 79 at 22–23; 84 at 13.  The Court need not

10  resolve this question, however, because the basis for Plaintiffs' claims of breach of fiduciary duty

11  is insufficient.

12       Plaintiffs allege in their complaint that the amendment eliminates benefits for those

13  participants who have already left covered employment because they were no longer able to age

14  into the Golden 80 or Golden 90 Plans, but not for those participants who were still working or

15  were able to return.  FAC ¶ 84.  Therefore, they assert, the Defendants "breached their fiduciary

16  duties" under ERISA by "favoring one group of participants over another."  FAC ¶ 85.  In their

17  briefing, Plaintiffs assert that the fiduciary duties under ERISA prevent fund trustees from

18  favoring one group of participants over another.  ECF No. 79 at 29.

19       It is true, of course, that ERISA requires certain duties of parties who act as the fiduciaries

20  for an ERISA fund.  See 29 U.S.C. § 1104(a)(1)(requiring fiduciary to "discharge his duties with

21  respect to a plan solely in the interest of the participants and beneficiaries"); see also Wright v.

22  Oregon Metallurgical Corp., 360 F.3d 1090 (9th Cir. 2004) (holding that "ERISA imposes three

23  general duties on pension plan fiduciaries": (1) to "discharge their duties with 'prudence'"; (2) to

24  "diversify investments to 'minimize the risk of large losses'"; and (3) to "act 'solely in the interest

25  of the participants' and for the 'exclusive purpose' of providing benefits to those participants."

26  (quoting 29 U.S.C. § 1104(a)(1))).

27       However, referencing these overarching fiduciary duties is not sufficient for Plaintiffs to

28  plead a claim — especially when the PPA explicitly authorizes, as a response to a fund being

United States District Court
Northern District of California

11

designated "critical," the exact kinds of changes that Defendants attempted to implement.[5]  The

PPA notes that "early retirement benefits" may be reduced and permits reductions for those who

are not currently receiving the benefit.  29 U.S.C. § 1085(e)(8)(A)(iii)–(iv);  see also Schwarz v.

UFCW-Northern Cal., Emp'rs Joint Pension Plan, No. C13-00977 LB, 2014 WL 186647 at *8-9

(N.D. Cal. Jan. 16, 2014) (approving an amendment under the PPA that made certain disability

retirement benefits available only for participants currently in pay status).  Indeed, both the PPA

and relevant case law suggest that Defendants' fiduciary duty in such a situation is to take

whatever action is necessary to ensure the fund remains solvent.  See, e.g., 29 U.S.C. § 1085(e)

(stating that a rehabilitation plan "must be adopted for multiemployer plans in critical status"

within 240 days after certification, which includes changes that "the plan sponsor determines are

reasonably necessary to emerge from critical status); Liss v. Smith, 991 F. Supp. 278, 299

(S.D.N.Y. 1998) ("Failure to monitor a fund's solvency and adjust levels, if proved, constitutes a

breach of fiduciary duty."); Saxton v. Cent. Pennsylvania Teamsters Pension Fund, No. CIV.A.

02-CV-986, 2003 WL 22952101, at *11 (E.D. Pa. Dec. 9, 2003) (a fiduciary's obligations "further

include monitoring the plan's solvency and adjusting benefit levels if and when appropriate").

     Assuming the truth of Plaintiffs' allegations, the changes made by Defendants appear to be

the types of changes contemplated and authorized by the statute.  As such, the Court finds in favor

of Defendants on Count IV.

## CONCLUSION

     For the foregoing reasons, the Motion for Judgment on the Pleadings is granted in part and

denied in part.  Counts II, III, and IV are dismissed.  Because it may be possible for Plaintiffs to

allege additional facts that suggest Defendants violated some kind of duty in relation to the

certification of the Fund as critical, Plaintiffs are granted leave to amend Count II.  Plaintiffs may

choose to denominate this claim as a breach of fiduciary duty if they so choose.  If Plaintiffs

---

[5] The cases that Plaintiffs cite in their brief, Morse v. Stanley, 732 F.2d 1139 (2d. Cir. 1984), and John Blair Comm'n, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan, 26 F.3d 360 (2d. Cir. 1994), are unavailing.  At best, these cases stand for the general proposition that the "trustee must deal even-handedly among the [the working and retired participants], doing his best for the entire trust looked at as a whole."  Morse, 732 F.2d at 1145.

1    choose to amend their complaint, they must do so within 14 days of this order.

2         IT IS SO ORDERED.

3    Dated:  March 22, 2016

4

5    _____

6                                 JON S. TIGAR
                                 United States District Judge