GEOFFREY V. WHITE (SBN. 068012)
LAW OFFICE OF GEOFFREY V. WHITE
21-C Orinda Way #324
Orinda, California 94563
T:  (415) 373-8279
F:  (415) 484-7692
E:  gvwhite@sprynet.com

*Attorney for Plaintiffs and the Class*

EMILY P. RICH (SBN 168735)
CONCEPCION E. LOZANO-BATISTA
(SBN 227227)
Weinberg Roger & Rosenfeld
1001 Marina Village Pkwy., Suite 200
Alameda, CA 94501
T:  (510) 337-1001
F:  (510) 337-1023
E:  erich@unioncounsel.net
E:  clazano@unioncounsel.net

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **JUAN M. REYES, SALVATORE TAGLIARENI, ANGEL DE LA CRUZ, ANTONIO MEROLLA, SMAIL MUSOVIC, TESFAYE GHEBREMEDHIN, PHILIP ROGERS, ALMOND REID, CARMELO CALABRO, RUSSELL NEUBERT, and JOHN WILLIAMS**, individually and as representatives on behalf of a class of similarly situated persons, | ) ) ) ) ) ) ) ) ) ) **Case No.  3:14-cv-5596-JST** ) ) **Assigned to Hon. Jon S. Tigar** ) ) ) |
| Plaintiffs, | ) **CLASS ACTION** ) ) |
| vs. | ) **SECOND AMENDED** ) **STIPULATION OF SETTLEMENT** |
| **BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND; and STEVEN BERTELLI, DAVID B. DURKEE, JETHRO A. HEAD, ART MONTMINY, JAMES RIVERS, RANDY D. ROARK, BARBARA BRASIER, TRAVIS CLEMENS, JON MCPHERSON, LOU MINELLA, DOUG RUYGROK, and JOHN WAGNER,** in their official capacities as Trustees, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) ) |

# TABLE OF CONTENTS

1.  DEFINITIONS.................................................................................................4

2.  CONDITIONS TO THE EFFECTIVENESS OF THE SETTLEMENT ..........................12

3.  RELEASES.................................................................................................14

4.  REPRESENTATIONS AND WARRANTIES.............................................................16

5.  NO ADMISSION OF LIABILITY.........................................................................17

6.  THE SETTLEMENT CONSIDERATION.................................................................18

7.  TERMINATION OF THE SETTLEMENT AGREEMENT ...........................................37

8.  CLASS COUNSEL'S ATTORNEYS' FEES AND EXPENSES .....................................38

9.  MISCELLANEOUS PROVISIONS.........................................................................39

This Second Amended Stipulation of Settlement (the "Settlement Agreement") is entered into by and between Class Plaintiffs Juan M. Reyes, Salvatore Tagliareni, Angel De La Cruz, Antonio Merolla, Smail Musovic, Tesfaye Ghebremedhin, Philip Rogers, Almond Reid, Carmelo Calabro, Russell Neubert**,** and John Williams, in the above-captioned Action for themselves and on behalf of the Certified Class, as defined below, on the one hand, and the Defendants Bakery and Confectionery Union and Industry International Pension Fund ("Pension Fund"); and Steven Bertelli, David B. Durkee, Jethro A. Head, Art Montminy, James Rivers, Randy D. Roark, Barbara Brasier, Travis Clemens, Jon McPherson, Lou Minella, Doug Ruygrok, and John Wagner, in their capacities as Trustees, in the above-captioned action, on the other, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate.

WHEREAS:

a.     The Pension Fund is a multiemployer defined benefit pension plan covering approximately 113,000 plan participants who work or worked previously in the unionized bakery and confectionery industry.  The Pension Fund is primarily funded by contributions made by employers on behalf of their active employees.  The Board of Trustees of the Pension Fund is the plan sponsor as well as the administrator.  The rules governing plan administration and benefit eligibility as of any particular time are set forth in the Plan Rules.

b.     The Pension Fund provides certain participants with subsidized early retirement benefits called "Golden 80" or "Golden 90" benefits.  Absent such benefits, under the Plan Rules, a participant becomes eligible to receive a full pension if he or she works in covered employment for 25 or more years and reaches the retirement age of 65, Plan Rules §§ 4.01, 1.15, while a participant who retires before age 65 or with less than 25 years of pension credit will receive a reduced monthly pension amount.  *Id.* §§ 4.05-.06.  The Pension Fund offers the Golden 80 and Golden 90 plans to bargaining units and employers that agree to a higher contribution rate, *id.* §§ 4.17-.18, 4.23-.24, 4.26(d) & (g), and these plans provide a full pension benefit at any age or with less than 25 years of pension credit, if the sum of a participant's age

and years of pension credit equals or exceeds 80 (or, in the case of the Golden 90 plan, 90). *Id.* §§ 4.17-.18, 4.23-.24.

c.      In the past, the Pension Fund permitted participants to "age into" Golden 80 or 90 benefits.  That is, a participant could leave covered employment before the sum of her age and service met the 80- or 90-year threshold and still become eligible for the full benefits when, later, the threshold sum of years was met due to the fact that the participant had gotten older.  In 2012, the Pension Fund adopted the 2012 Rehabilitation Plan that included, *inter alia*, an amendment requiring participants, with certain exceptions, to be working in covered employment in order to become eligible for Golden 80 or 90 benefits.

d.      On December 23, 2014, Plaintiff Juan Reyes instituted the above-captioned action in the United States District Court for the Northern District of California to challenge this plan amendment – defined below as the 2012 Amendment – that changed the eligibility rules for Golden 80 and 90 benefits.  On April 27, 2015, the remaining Class Representatives joined the action with the filing of the First Amended Class Action Complaint. On September 22, 2015, the Court certified the Plaintiff Class (as defined below).  On September 24, 2015, Defendants moved for judgment on the pleadings as to the Amended Complaint, which Class Plaintiffs opposed.  On March 22, 2016, the Court denied the motion as to Count I and granted the motion as to the remaining counts with leave to re-plead as to Count II.  On April 5, 2016, Plaintiffs filed their Second Amended Class Action Complaint.

e.      As set forth more fully in Article 5, Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in Plaintiffs' Complaints and believe the claims lack merit. Plaintiffs believe the claims against Defendants are meritorious.

f.      After Plaintiffs filed their Second Amended Class Action Complaint, and with the parties having already engaged in substantial document discovery, the parties agreed to mediate the Action before an independent mediator, Jed Melnick of JAMS, who has extensive experience mediating complex ERISA cases.  In the lead-up to the mediation, Class Counsel requested various data and information relevant to a potential settlement, and Defendants' counsel

provided detailed answers and information in response to their requests.   The parties also exchanged detailed mediation briefs, setting forth the merits of the legal arguments that would be interposed if this Action were litigated to conclusion.   The parties then engaged in a day-long mediation and, at its conclusion, reached an agreement in principle.   The parties' negotiations on terms continued in a further face-to-face settlement discussion on October 14, 2016 and in telephonic conferences throughout November 2016.   As a result of those additional discussions, several issues were resolved concerning the process for Class Members receiving incidental monetized relief from the injunctive relief described herein.   The resolution reached streamlined the process, reduced the previously contemplated year-long internal and external remedy process and costs associated therewith, and effectively eliminated the Claims Procedures for two thirds of persons identified by the Fund as Probable Payees permitting such Class Members (subject to the right to dispute under the remedy process herein) to receive payment shortly after the Effective Date of Settlement.   The remaining one-third of those Class Members receiving monetized relief will, through the assistance of Class Counsel and the Settlement Administrator, be able to submit a limited amount of paperwork in order to identify themselves and their entitlement to the monetized relief, along with certain other documentation normally needed in order to generate and trigger a pension benefit payment.

g.      The Parties wish to resolve the Action pursuant to an agreement whereby, in return for dismissal of the action and the Releases by Class Plaintiffs and the Class, the Court will enter a permanent injunction substantially in the form that is set forth  in paragraph 5 of the Proposed Final Order and Judgment (annexed as <u>Exhibit 1</u> hereto), to enjoin the Fund from enforcing the 2012 Amendment with respect to Prospective Claims, and further enjoining the Fund from applying the 2012 Amendment to Retroactive Claims in a manner that would be inconsistent with this Agreement.   Such injunction shall result in incidental monetized relief payable to certain Class Members in accordance with this Settlement.

h.      Class Counsel have conducted a thorough investigation into the facts of the Action, including conducting an extensive review of relevant documents, information, and data

provided by Defendants, and have diligently investigated the Class's claims against Defendants. Based on this information and their own independent investigation and evaluation, Class Counsel are of the opinion that the settlement with Defendants on the terms set forth in this Settlement is fair, reasonable, and adequate and is in the best interests of the Class in light of all known facts and circumstances, including the risks of significant expense and delay, defenses asserted by Defendants, equitable shaping of the remedy by the Court, the uncertainty of complex litigation through trial, and potential appellate issues.

NOW, THEREFORE the parties, for good and valuable consideration, have entered into the following Settlement Agreement:

## 1.   DEFINITIONS

As used in this Settlement Agreement, capitalized terms and phrases not otherwise defined have the meanings provided below.

**1.1.**   "2012 Amendment" shall mean any provision in the 2012 Rehabilitation Plan that states, in substance, that participants who had not yet reached the combination of age and service required to be eligible for a Golden 80 or Golden 90 pension as of April 30, 2012, will not be permitted to age into the Golden 80 or Golden 90 benefit after leaving covered employment, with certain specific exceptions, *see* 2012 Rehabilitation Plan at 8 (clause (iv)), 20-21, provisions which were later embodied in § 4.17(c) and § 4.23(c) of the Plan Rules.   The term "2012 Amendment" does not include any other plan amendments in the 2012 Rehabilitation Plan, nor does it include any plan amendments that post-date the 2012 Rehabilitation Plan (including amendments that are otherwise identical to the 2012 Amendment except for the effective date). Thus, for example, the 2016 Amendment is outside the scope of this definition.

**1.2.**   "2012 Rehabilitation Plan" shall mean the document dated November 7, 2012 that is Docket No. 1-5 in the Action.

1.3.    "2016 Amendment" shall mean the plan amendment to the Golden 80/90 eligibility rules in the readopted Rehabilitation Plan, effective June 1, 2016, that is Exhibit B to John Beck's Declaration in Support of Motion for Preliminary Approval of Settlement, Dkt. 117-2.

1.4.    "2016 Notice of Critical Status" shall mean the "Notice of Critical and Declining Status" dated April 27, 2016, which is attached as Exhibit C to John Beck's Declaration in Support of Motion for Preliminary Approval of Settlement Dkt. 117-3.

1.5.    "Action" shall mean the civil action styled as *Juan M. Reyes, et al v. Bakery and Confectionery Union and Industry International Pension Fund, et al*, Case no. 3:14-cv-5596-JST now pending in the United States District Court for the Northern District of California and all claims asserted therein.

1.6.    "Agreement Execution Date" shall mean the date on which this Settlement Agreement is fully executed, as provided in Section 9.15 below.

1.7.    "Application" shall mean an "Application Form" submitted by a Class Member either to the Settlement Administrator or the Fund, pursuant to Section 6.4.2 or 6.4.6, below.

1.8.    "Application Deadline" shall mean the date ninety (90) days after the mailing of the Notice.

1.9.    "Application Form" shall mean the document that is Exhibit A-2 to the Proposed Order Preliminarily Approving Settlement and Providing For Notice annexed as Exhibit 2 hereto, as modified, if at all, by the Court.

1.10.    "Claims Procedure" shall mean the procedures set forth in Article 6 for determining a Class Member's eligibility for, and the amount of, a Settlement Award.

1.11.    "Class" shall mean (Order of the Court at Doc. 72):

All participants in the Bakery and Confectionery Union and Industry International Pension Fund or, if deceased, their beneficiaries or Estates, who

(i)  Accrued (a) years of covered Employment credits and (b) age credits towards eligibility for pension benefits under Plan C (also known as the "Golden 90") or Plan G (also known as "Golden 80"), and

(ii)  Who would be eligible for Plan C or Plan G benefits except that their age and years of service first totaled 80 (with respect to Plan G eligibility) or 90 (with respect to Plan C eligibility) on or after May 1, 2012, at a time when they were not working in covered employment.

**1.12.**    "Class Counsel" shall mean Thomas O. Sinclair, Geoffrey V. White, William D. Frumkin, Elizabeth E. Hunter, Judith L. Spanier, and Nancy Kaboolian.

**1.13.**    "Class Member" shall mean any Person in the Class and anyone acting on behalf of a Person in the Class with due authorization.

**1.14.**    "Class Member In Pay Status" shall mean a Class Member (a) who, but for the 2012 Amendment's prohibiting the Class Member from aging into the benefit, would have been eligible for a Golden 80 or 90 benefit with a Pension Effective Date falling within the Payment Period, and (b) who is already receiving a pension from the Fund with a Pension Effective Date before June 1, 2016, and, for any such participant who is deceased as of the Effective Date of Settlement, his or her beneficiary or estate.

**1.15.**    "Class Members Recovering Incidental Monetized Relief" shall mean those Class Members who (a) establish (or in the case of Class Members In Pay Status, whose prior applications to the Pension Fund have already established) that, but for the 2012 Amendment's prohibiting the Class Member from aging into the benefit, the Class Member would have been eligible for a Golden 80 or 90 benefit with a Pension Effective Date falling within the Payment Period, (b) comply with all of the requirements that are applicable to the Class Member in the

Claims Procedures set forth in this Settlement Agreement, and (c) have Payment Period Settlement Amounts that are greater than zero.

1.16.  "Class Representatives" or "Class Plaintiffs" shall mean Juan Reyes; Salvatore Tagliareni; Angel De La Cruz; Antonio Merolla; Smail Musovic; Tesfaye Ghebremedhin; Philip Rogers; Almond Reid; Carmelo Calabro; Russell Neubert; and John Williams.

1.17.  "Complaint" shall mean the Complaint filed December 23, 2014 (Doc.1), the Amended Complaint filed April 27, 2015 (Doc. 44), and the Second Amended Complaint filed April 5, 2016 (Doc. 93).

1.18.  "Complete Application" shall mean an Application that contains all those items of the necessary information and documentation to support a determination with respect to a Retroactive Claim as set forth in Section 1.25.

1.19.  "Completed Application Deadline" shall mean, with respect to an Application, seventeen (17) days from the mailing of a Notice of Deficiency.

1.20.  "Court" shall mean the United States District Court for the Northern District of California.

1.21.  "Defendants" shall mean the Pension Fund as well as Steven Bertelli, David B. Durkee, Jethro A. Head, Art Montminy, James Rivers, Randy D. Roark, Barbara Brasier, Travis Clemens, Jon McPherson, Lou Minella, Doug Ruygrok, and John Wagner, and their successors as Trustees.

1.22.  "Determination Appeal" shall mean a written submission, together with any supporting documentation, by a Class Member that sets forth all of the reasons why the Class Member believes that the Fund erred in its initial determination with respect to the Class Member's eligibility for, or the amount of, a Settlement Award.

1.23.  "Effective Date of Settlement" shall mean the first date on which the Order and

Judgment has become Final.

1.24.   "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, et seq., including all regulations promulgated and case law thereunder.

1.25.   "Facially Complete" means, with respect to an Application, that the Class Member fully filled out the Application Form and included all necessary documentation, as determined by the Fund, including but not limited to (a) the participant's birth certificate and, if applicable, (b) the participant's spouse's birth certificate, (c) the marriage certificate, (d) the divorce decree, (e) the participant's death certificate, and (f) the required documentation of military service.

1.26.   "Fairness Hearing" shall have the meaning set forth in Section 2.1.4.

1.27.   "Final" shall mean, with respect to a judicial order (including the Order and Judgment), that the time for filing an appeal from the judicial order has expired and no appeal has been filed, or any and all appeals have been finally determined with no right to further appeal. Similarly, "Final" shall mean, with respect to an Application or Settlement Award, that there has been a determination with respect to the Application or with respect to the Payment Period Settlement Amount of a Class Member In Pay Status and that either (a) the time for appealing from the determination under Section 6.8.1 has expired and the Class Member has not appealed, (b) the time for seeking the Court's review under Section 6.8.3 has expired and the Class Member has not sought such review, or (c) the Court has rendered its decision with respect to the appeal under Section 6.8.3.

1.28.   "First Distribution Date" shall have the meaning given to it in Section 6.9.

1.29.   "Golden 80 or 90 benefits," "Golden 80 and 90 benefits," and "Golden 80/90 benefits" shall mean the subsidized early retirement benefits described in § 4.18 (which concerns

Golden 90 benefits under Plan C) or § 4.24 (which concerns the Golden 80 benefit under Plan G) of the Plan Rules.  To clarify, the term is intended to include the entire amount of a Class Member's monthly "Golden 80 or 90 benefit" even that portion which from an actuarial perspective is equal to an early retirement benefit.

    **1.30.**   "Initial Benefit Amount" shall have the meaning given to it in Section 6.6.

    **1.31.**   "MPRA" shall mean the Multiemployer Pension Reform Act of 2014.

    **1.32.**   "Notice" shall mean the form of notice appended as Exhibit A-1 to the Proposed Order Preliminarily Approving Settlement and Providing For Notice annexed as <u>Exhibit 2</u> hereto, as modified, if at all, by the Court.

    **1.33.**   "Notice of Deficiency" shall mean a written communication that identifies one or more deficiencies in a Class Member's Application and that provides the Class Member with a specific date seventeen (17) days from the mailing of the Notice of Deficiency by which the Class Member will be required to cure the deficiencies identified in the letter.

    **1.34.**   "Order and Judgment" shall mean an order and judgment approving the Settlement in substantially the form annexed as <u>Exhibit 1</u> hereto.

    **1.35.**   "Parties" shall mean the undersigned parties to this Settlement Agreement.

    **1.36.**   "Payment Period" shall mean May 1, 2012 through May 31, 2016.

    **1.37.**   "Payment Period Settlement Amount" shall mean the amount calculated under Section 6.6.

    **1.38.**   "Pension Effective Date" shall have the meaning ascribed to it in the Plan Rules.

    **1.39.**   "Pension Fund" or "Fund" shall mean the Bakery and Confectionery Union and Industry International Pension Fund, *i.e.*, the multiemployer trust fund through which funding is provided for the administration of, and the payment of benefits under, the Bakery and

Confectionery Union and Industry International Pension Plan on terms set out in the Plan Rules and pursuant to the Agreement and Declaration of Trust establishing the Fund.

**1.40.**   "Person" shall mean an individual, estate, partnership, corporation, governmental entity, trust, or any other form of legal entity or organization.

**1.41.**   "Plan Rules" shall mean the Rules and Regulations of the Bakery and Confectionery Union and Industry International Pension Fund attached as Exhibit A to John Beck's Declaration in Support of Motion for Preliminary Approval of Settlement, which are presently in effect, or any future amended version of these Rules and Regulations in effect at the time at which they are to be applied.

**1.42.**   "Preliminary Approval Motion" shall mean the renewed motion for preliminary approval that Plaintiffs will file with respect to this Settlement Agreement (and not the motion filed by Plaintiffs on October 26, 2016 or on December 20, 2016).

**1.43.**   "Preliminary Approval Order" shall mean the order preliminarily approving the Settlement in substantially the form annexed as Exhibit 3 hereto.

**1.44.**   "Presumed Pension Effective Date" shall mean, with respect to a Class Member, the earliest date on which the Class Member could have started to receive monthly Golden 80 or 90 benefits under the Plan Rules, assuming that the Class Member had filed a written application as early as permitted.

**1.45.**   "Probable Payees" shall mean Class Members who the Pension Fund, from a review of its records, believes are likely to be able to qualify as Class Members Recovering Incidental Monetized Relief, excluding any Class Member In Pay Status.

**1.46.**   "Prospective Claims" shall mean any claim or application filed by or on behalf of a participant or beneficiary for a Golden 80 or 90 benefit with a Pension Effective Date on or after June 1, 2016.

**1.47.** "Released Claims" shall have the meaning set forth in Section 3.2.

**1.48.** "Released Parties" shall have the meaning set forth in Section 3.1.

**1.49.** "Releases" shall mean the releases set forth in Sections 3.1, 3.2, and 3.3.

**1.50.** "Representatives" shall mean actuaries, attorneys, agents, directors, officers, and employees.

**1.51.** "Retroactive Claim" shall mean any claim or application filed by or on behalf of a participant or beneficiary for a Golden 80 or 90 benefit with a Pension Effective Date after April 30, 2012 and on or before May 31, 2016.

**1.52.** "Second Distribution Date" shall have the meaning given it in Section 6.9.

**1.53.** "Settlement" shall mean the settlement to be consummated under this Settlement Agreement pursuant to the Order and Judgment.

**1.54.** "Settlement Administrator" shall mean Strategic Claims Services.

**1.55.** "Settlement Agreement" shall mean this Second Amended Stipulation of Settlement.

**1.56.** "Settlement Award" shall mean the amount awarded to a Class Member Recovering Incidental Monetized Relief under the Claims Procedure set forth in Article 6.

**1.57.** "Settlement Fund" shall mean a temporary sub-trust of the Pension Fund established by the Settlement Administrator that will be used for the exclusive purpose of (i) providing benefits to Class Members in the form of Settlement Awards to Class Members Recovering Incidental Monetized Relief, and (ii) defraying reasonable expenses of administering those benefits and the sub-trust, which are understood to include attorneys' fees and expenses and class representative fees that may be awarded by the Court upon application by Class Counsel as provided in Section 8.

**1.58.** "Statement of Calculated Benefit" shall mean a letter from the Settlement

Administrator to a Class Member In Pay Status communicating the Pension Fund's calculation of his or her Payment Period Settlement Amount and advising the Class Member that the Payment Period Settlement Amount will be reduced by the deduction of administrative expenses, attorneys' fees, and compensation to Class Representatives.   An exemplar of that letter is attached as Exhibit A-4 to the Proposed Order Preliminarily Approving Settlement and Providing for Notice.

**1.59.**   "Successor-In-Interest" shall mean a Person's estate, legal representatives, heirs, successors or assigns, including successors or assigns that result from corporate mergers or other structural changes.

**1.60.**   "Trustee" shall mean any person who has served or will serve as a trustee of the Pension Fund at any time on or after January 1, 2012, including those named as Defendants in this Action, and shall also mean the Successors-In-Interest of the individuals who served as trustees during this time period (including, for example but without limitation, the Successor-In-Interest of Robert Oakley who has died).

**2.    CONDITIONS TO THE EFFECTIVENESS OF THE SETTLEMENT**

This Settlement shall be effective when each of the following conditions in Sections 2.1 through 2.2 has been satisfied.   The Parties will use reasonable, good faith, best efforts to cause each of the conditions to occur within the times indicated.

**2.1.    Condition #1:  Court Approval**.  The Settlement shall be approved by the Court in accordance with the following steps.

**2.1.1.  Motion for Preliminary Approval of Settlement and of Notices**.  By February 27, 2017 or in accordance with the Court's scheduling order, Class Plaintiffs will file the Preliminary Approval Motion with the Court for entry of the Preliminary Approval Order.   Within seven (7) days after the Class Plaintiffs' filing of the

Preliminary Approval Motion, Defendants shall file notice that they do not oppose the motion provided said motion meets the requirements set out within this Agreement.

**2.1.2.  Dissemination of Notice**.  Subject to the requirements of the Preliminary Approval Order, the Settlement Administrator shall cause the Notice to be disseminated to the Class within twenty-one (21) business days after entry of the Preliminary Approval Order.

**2.1.3.  Issuance of Notice under the Class Action Fairness Act**.  On December 30, 2016, Defendants provided notice under CAFA  to the United States Department of Justice and to the Attorneys General of all states in which Class Members are known by the Pension Fund to reside, as specified by 28 U.S.C. § 1715 of the December 20, 2016 amended stipulation. Defendants shall, at their own expense, provide a supplemental notice within ten (10) days after the filing of the Preliminary Approval Motion. Defendants shall give Class Counsel the opportunity to review the notices at least three (3) days before service.

**2.1.4.  The Fairness Hearing**.  The Court will conduct a hearing at which it will consider whether the Settlement is fair, reasonable, and adequate ("Fairness Hearing"). At or after the Fairness Hearing the Court will determine:  (i) whether to enter the Order and Judgment approving the Settlement and dismissing the Action with prejudice (Exhibit 1); (ii) whether the Claims Procedure as provided in Section 6 herein should be approved; and (iii) whether to award attorneys' fees and expenses to Class Counsel and class representative fees to the Class Plaintiffs.  The Parties agree to support entry of the Order and Judgment as contemplated by clauses (i) and (ii) of this paragraph.  The Parties will seek to set the Fairness Hearing at least ninety (90) days from the date on which Defendants are required to provide supplemental notice under Section 2.1.3. All

objections to the Settlement must be postmarked no later than twenty-eight (28) days before the Fairness Hearing scheduled by the Court and mailed to:

> Office of the Clerk of the Court
> Attn:  *Reyes v. Bakery Objection,* 14-cv-5596, JST
> United States District Court
> 450 Golden Gate Avenue
> San Francisco, CA 94102-3489

**2.1.5.   Entry of Order and Judgment**.  The Court shall have entered the Order and Judgment.

**2.2.     Condition #2:  Finality of Order and Judgment**.  The Order and Judgment shall have become Final.

## 3.     RELEASES

**3.1.     Released Parties**.  For purposes of this Settlement Agreement, "Released Parties" means all Defendants and Trustees, as well as any other Person that at any time between January 1, 2012 and June 1, 2016 served as a named or functional fiduciary of the Pension Fund or as a Representative of any Defendant or Trustee.

**3.2.     Released Claims**.   For purposes of this Settlement Agreement, "Released Claims" means any and all actual or potential, known or unknown, claims (including but not limited to claims to the Pension Fund for benefits, as well as claims for attorneys' fees, expenses and costs), actions, damages, losses, causes of action, demands, obligations, and liabilities arising out of, or related to, the transactions or occurrences asserted in Plaintiffs' Original Class Action Complaint, Plaintiffs' First Amended Class Action Complaint, or Plaintiffs' Second Amended Class Action Complaint in the Action, including but not limited to (i) the determination that the Pension Fund was in critical status under ERISA Section 305 in the plan year 2012; (ii) plan amendments adopted in the 2012 Rehabilitation Plan affecting Golden 80 or Golden 90 benefits; and (iii) notice of such plan amendments; except that Released Claims do

not include:  (a) any rights or duties arising out of this Settlement Agreement, including the express warranties and covenants in this Settlement Agreement; (b) any right of Class Plaintiffs to apply for a class representative fee award and on Class Counsel's behalf for an award of attorneys' fees and expenses in the Action as set forth in Section 8; (c) any ERISA Section 502(a)(1)(B) claim for vested benefits by any Plan participant or beneficiary pursuant to the Plan Rules where such claims are unrelated to any matter asserted in this Action; and (d) any potential claims arising out of the 2016 Amendment and/or the 2016 Notice of Critical Status where such claims do not challenge the validity of the determination that the Pension Fund was in critical status under ERISA Section 305 in the plan year 2012 or the validity of plan amendments adopted in the 2012 Rehabilitation Plan affecting Golden 80 or Golden 90 benefits.  With respect to Class Members other than the Class Representatives, in no event will the scope of the Released Claims be broader than the res judicata effect of a final judgment in this Action.

    **3.3.   Scope of Releases**.  Effective upon the Order and Judgment becoming Final, Class Plaintiffs, on behalf of themselves and as Class Representatives, and all Class Members shall be deemed to have (and by operation of the Order and Judgment shall have) fully, finally, and forever released, relinquished, and discharged the Released Parties from any and all Released Claims and shall forever be enjoined from prosecution of any and all of the Released Parties for said claims.  The Parties intend and agree that the Releases granted in this Article 3 shall be effective as a bar to any and all currently unsuspected, unknown, or partially known claims within the scope of their express terms and provisions.  Accordingly, Class Plaintiffs hereby expressly waive, on their own behalf and on behalf of all Class Members, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common laws of any other State, Territory, or other jurisdiction.  Section 1542 reads in pertinent part:

> A general release does not extend to claims that the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Class Plaintiffs, on their own behalf and on behalf of all Class Members, hereby acknowledge that the foregoing waiver of the provisions of Section l542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction was separately bargained for and that the Defendants would not enter into this Settlement Agreement unless it included a broad release of unknown claims. Class Plaintiffs, on their own behalf and on behalf of all Class Members, expressly agree that all release provisions in this Settlement Agreement shall be given full force and effect, in accordance with Section 3.2, including those terms and provisions relating to unknown, unsuspected, and future claims, demands, and causes of action. Class Plaintiffs assume for themselves, and on behalf of the Class, the risk of his, her or its respective subsequent discovery or understanding of any matter, fact, or law, that if now known or understood, would in any respect have affected his, her, or its entering into this Settlement Agreement.

**3.4.**     Consistent with the foregoing, Class Members whose Pension Effective Date falls within the Payment Period shall be barred from claiming Golden 80 or Golden 90 benefits for any period prior to June 1, 2016 except as provided in the Claims Procedures set forth in Section 6; provided, however, that this paragraph shall not be deemed to limit the scope of the Release in Section 3.2.

**4.      REPRESENTATIONS AND WARRANTIES**

**4.1.    Parties' Representations and Warranties**.   The Parties, and each of them, represent and warrant:

**4.1.1**.  That they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among Class Counsel and counsel for Defendants; that

in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements or omissions pertaining to any of the foregoing matters by any party or by any Person representing any party to this Settlement Agreement.  Each of the Parties assumes the risk of mistake as to facts or law; and

**4.1.2.**  That they have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each Person executing this Settlement Agreement on behalf of each of the Parties.  The Parties, and each of them, further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the Settlement, this Settlement Agreement and all of the matters pertaining thereto as he, she, or it deems necessary.

**4.2.**    **Signatories' Representations and Warranties**.  Each individual executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

**5.**    **NO ADMISSION OF LIABILITY**

The Parties understand and agree that this Settlement Agreement and the payments made pursuant to it embody a compromise settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement,

shall be deemed to constitute any evidence of wrongdoing by any of the Defendants, or give rise to any inference of wrongdoing or admission of wrongdoing or liability in this or any other proceeding.  Defendants expressly deny any liability or wrongdoing with respect to the matters alleged in the Action.  Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except:  (i) in an action or proceeding to enforce the terms of this Settlement Agreement or the Preliminary Approval Order or the Order and Judgment; (ii) in an action or proceeding where the Releases provided pursuant to this Settlement Agreement may serve as a bar to recovery; or (iii) in an action or proceeding brought against the Pension Fund or Trustees by third parties if the Settlement Agreement or the Releases are relevant to claims or defenses in such action or proceeding.

## 6.    THE SETTLEMENT CONSIDERATION

**6.1.    Injunctive Relief**.  Defendants agree to the entry of a permanent injunction substantially in the form that is set forth in paragraph 5 of the Proposed Final Order and Judgment (annexed as <u>Exhibit 1</u> hereto), which enjoins the Pension Fund from enforcing the 2012 Amendment with respect to Prospective Claims, and further enjoins the Fund from applying the 2012 Amendment to Retroactive Claims in a manner inconsistent with the Claims Procedures set forth in the Settlement Agreement.

To illustrate, by example, this injunction would preclude the Pension Fund (a) from relying on the 2012 Amendment to deny a Class Member's claim for Golden 80 or 90 benefits that the member would have aged into on July 1, 2016 (*i.e.*, a Prospective Claim), and (b) from relying on the 2012 Amendment to deny a claim for Golden 80 or 90 benefits with a Pension Effective Date of January 1, 2013 (*i.e.*, a Retroactive Claim) made pursuant to the Claims Procedures (e.g., filed in a timely fashion and limited to the amount set forth in Section 6.5).

Also by way of illustration, the injunction would not preclude the Pension Fund (i) from relying on any other plan amendment, including the 2016 Amendment or a future amendment adopted under the MPRA, to deny a Class Member's claim for Golden 80 or 90 benefits that the member would have aged into after the Payment Period, (ii) from relying on the 2012 Amendment to deny a claim for Golden 80 or 90 benefits with a Pension Effective Date of January 1, 2013, where the claim is not made pursuant to the Claims Procedures (e.g., if the claim is filed after the Application Deadline, or to the extent that the Class Member seeks benefits in excess of the amount calculated in Section 6.5), or (iii) from applying other rules that were adopted in the 2012 Rehabilitation Plan or subsequently that affect Golden 80 or 90 benefits but are not the 2012 Amendment, including, for example, applying the rules that eliminated Husband and Wife Pension subsidies or that increased the minimum pension credit for certain pensions (including Golden 80 and 90 pensions) from 10 to 15 years.

Nothing in this injunctive relief or elsewhere in the Settlement Agreement shall be construed to prohibit prospective changes by the Pension Fund to the Plan Rules by future plan amendment, including without limitation any amendments that may be adopted under the authority of the MPRA; provided that any such amendment will not affect any Settlement Award to a Class Member.

**6.2.    Responsibilities of Settlement Administrator**. The Settlement Administrator shall have the following responsibilities:

**6.2.1.**  To maintain custody of the Settlement Fund for the purpose of effectuating the Claims Procedure.

**6.2.2.**  To mail the Notice to the Class as soon as practicable and within twenty-one (21) business days after the Preliminary Approval Order is entered, based on information provided to the Settlement Administrator by the Pension Fund from its files;

to enclose with the Notice sent to a Class Member In Pay Status a letter substantially in the form attached as Exhibit A-4 to the Proposed Order Preliminarily Approving Settlement and Providing For Notice; to enclose an Application Form, to be printed on color paper, with the Notice that is sent to a Class Member (a) who is  not a Class Member In Pay Status and (b) who is either (i) a Probable Payee or (ii) a Class Member who is not a Probable Payee but whom the Fund identifies (in a list to be provided to the Settlement Administrator within the time specified in Section 6.3.1) as having been within two years of qualifying as a Probable Payee; to conduct a search on a commercial database for the best addresses of the Class Members for whom the Pension Fund does not have current address information; to use the best address available in mailing the Notice; to provide the Fund with the updated contact information it obtained from the commercial vendor; to post the Notice and Application Form, within twenty-one (21) business days after entry of the Preliminary Approval Order, on a website to be created by the Settlement Administrator; to arrange, as soon as practicable, for the translation of the Notice and Application Form into Spanish, and to post the Spanish-language versions on the website; to create a toll-free number for Class Members to call with questions about the Settlement; to arrange, within thirty (30) business days after entry of the Preliminary Approval Order, for the publication of short-form notice in the form attached hereto as Exhibit 2 at A-3 in USA Today or another newspaper with a national distribution; and to make reasonable attempts to find new addresses for Class Members whose Notice packets are returned as undeliverable.

**6.2.3.**   To respond to mailed and telephonic inquiries concerning the Settlement.

**6.2.4.**   To create a report at the conclusion of the distribution(s) described herein as to unclaimed funds remaining in the Settlement Fund and reporting on the cost of

distributing, in accordance with Section 6.9.7, the remaining balance to those Class Members Recovering Incidental Monetized Relief who cashed or deposited their Settlement Award checks. If the report of the Settlement Administrator concludes the costs of making a supplemental distribution would not permit meaningful payments to the Class Members Recovering Incidental Monetized Relief, then to distribute the remaining balance in accordance with this Court's Order.

**6.2.5.**   To collect, scan, and maintain for inspection the Applications and other correspondence submitted by Class Members to the Settlement Administrator; to determine whether the Class Members' Applications appear Facially Complete; and to transmit copies of Applications that are Facially Complete to the Pension Fund in weekly batches.

**6.2.6.**   As to those Applications that the Settlement Administrator determines are not Facially Complete, the Settlement Administrator shall mail the Class Member a Notice of Deficiency within ten (10) business days after the Settlement Administrator received the Application; and for Applications that are Facially Complete but as to which the Fund later identifies a need for additional information or documentation from the Class Member, the Settlement Administrator shall transmit to the Class Member a Notice of Deficiency communicating the Application's deficiencies as identified by the Fund, and the Settlement Administrator shall do so within five (5) business days after the Fund notifies the Settlement Administrator of the deficiencies in the Application.

**6.2.7.**   To attempt to contact those Class Members to whom the Settlement Administrator mails a Notice of Deficiency within fourteen (14) days after the mailing of said Notice of Deficiency with a reminder to submit the specified information identified within the Notice of Deficiency.

**6.2.8.**   To attempt to contact with a reminder to submit an Application any Probable Payee who has not submitted an Application as of forty-five (45) days after the Notice was sent; and to attempt to contact a second time with a reminder to submit an Application any such Probable Payee who has not submitted an Application as of sixty (60) days after the date on which Notice was sent.  To request from the Pension Fund any additional contact information needed to contact Class Members.

**6.2.9.**   To identify when an Application appears to have missed the Application Deadline or the Completed Application Deadline and to communicate that information to the Fund when transmitting the Application to the Fund.

**6.2.10.** To maintain detailed and comprehensive records of its actions as Settlement Administrator, including records demonstrating the performance of each of its duties set forth under the Settlement Agreement as well as all communications sent to or from the Settlement Administrator by Class Members or the Fund. Among other things, such records of communications to be maintained by the Settlement Administrator shall contain recipients' addresses, the dates of mailing, copies of all Notices of Deficiencies, and the dates on which any communication, including any Application, is received by the Settlement Administrator.  To provide for clarity in its record keeping, the Settlement Administrator shall assign a number to each Application received beginning with the number one (1) and assigned sequentially thereafter.   Class Counsel, counsel for Defendants, and the Fund shall have a right to access and review the Settlement Administrator's records in a reasonable manner.   The Settlement Administrator shall compile monthly expense reports and send them to Class Counsel and counsel for Defendants.

**6.2.11.** To mail to Class Members the denials of their Applications based on the

Pension Fund's determination that the applicant has failed to meet any of the eligibility conditions set forth in Section 6.4, including the Fund's determination that an application has missed the Application Deadline or the Completed Application Deadline; and to include in said mailings such information or attachments as the Pension Fund provides.

**6.2.12.** To mail to Class Members in Pay Status the Statements of Calculated Benefits.

**6.2.13.** To review the Fund's calculations as set forth in Section 6.9.1.

**6.2.14.** To calculate Proportional Administrative Expenses and Gross Administrative Expenses as set forth in Section 6.7.

**6.2.15.** To distribute, in accordance with Section 6.9, payments to Class Members Recovering Incidental Monetized Relief in an amount that the Settlement Administrator shall calculate pursuant to the Claims Procedures.

**6.2.16.** To comply, in cooperation with the Pension Fund, with the distribution rules that apply to qualified plans, including honoring qualified domestic relations orders, requiring waivers of annuity forms of benefits (including qualified joint and survivor annuities), and providing Class Members Recovering Incidental Monetized Relief the opportunity to roll over their Settlement Award in order to defer taxes on it.

**6.2.17.** To provide a record of disbursements to the Pension Fund and Class Counsel along with any other accounting information or reports that may be required for the Pension Fund's financial statements and Form 5500.

**6.2.18.** To provide to payees and file with the appropriate governmental agencies all tax reports that may be required for the payments that the Settlement Administrator disburses.

**6.3.** **Responsibilities of the Pension Fund with Respect to the Claims Procedure**.

The Pension Fund shall have the following responsibilities with respect to the Claims Procedure:

**6.3.1.**   To provide to the Settlement Administrator, within three (3) business days after the later of  April 6, 2017 or the date of the Preliminary Approval Order, (a) the name, address, and Social Security Number of each Class Member to the extent such information can be obtained from the Fund's records, (b) a list of Probable Payees and those within two years of eligibility, (c) a list of Class Members In Pay Status containing the amount of Payment Period Settlement Amount attributable to the Class Member in Pay Status, and (d) as to the list of Probable Payees, an estimate of the Probable Payees' potential Payment Period Settlement Amount that could be made should the Probable Payee qualify under the terms of this Settlement Agreement for a Settlement Award.

**6.3.2.**   To post copies of the Notice and Application Form on its website, within twenty-one (21) business days after entry of the Preliminary Approval Order, and to post copies of the Notice and Application Form in Spanish as soon as practicable after receiving the translations described in Section 6.2.2.

**6.3.3.**   To forward to the Settlement Administrator any Applications, to the extent that the Pension Fund can identify them as such, sent directly to the Fund and to do so within three (3) business days or as soon as practicable after they are received.  The Settlement Administrator will treat such Applications in the same manner as those it receives directly from Class Members.

**6.3.4.**   To adopt, as soon as practicable after entry of the Order and Judgment, the plan amendments necessary to effectuate this Settlement, which shall be shared with Class Counsel for comment in advance.

**6.3.5.**   To establish an account for the Settlement Fund, to provide signature authority to the Settlement Administrator, and to deposit a $500,000.00 advance payment

into the Settlement Fund within five (5) business days after entry of the Preliminary Approval Order.

**6.3.6.** To determine, in the course of reviewing Applications, whether Facially Complete Applications, which are transmitted to it by the Settlement Administrator, are Complete Applications. With respect to an Application that is not a Complete Application, to notify the Settlement Administrator promptly of the deficiencies in the Application so that the Settlement Administrator can mail an appropriate Notice of Deficiency to the Class Member.

**6.3.7.** To make eligibility determinations with respect to all Complete Applications and, for each applicant it determines to be eligible as well as for each Class Member In Pay Status, to calculate the "Payment Period Settlement Amount" defined in Section 6.6. With respect to Class Members In Pay Status, the Pension Fund will transmit the calculation of the Payment Period Settlement Amount to the Settlement Administrator in accordance with Section 6.3.1 and will deposit the sum of those Payment Period Settlement Amounts in the Settlement Fund within three (3) business days after the Order and Judgment becomes Final. With respect to Class Members other than Class Members In Pay Status, the Pension Fund will transmit the eligibility determination and (where appropriate) the calculation of the Payment Period Settlement Amount for a Class Member to the Settlement Administrator on a weekly basis. The Pension Fund shall make the determination within sixty (60) days after the Pension Fund receives a Complete Application or as soon as practicable where the Complete Application raises complex issues. If the total number of Facially Complete Applications (excluding the Class Members In Pay Status) exceeds 1,400 or 2,300, the Pension Fund shall have an additional thirty (30) or sixty (60) days, respectively, to make its

determination on those applications received in excess of the numbers specified above. Class Counsel shall have access to this information on a reasonable basis from the Settlement Administrator and the Pension Fund.

**6.3.8.**   To deposit the balance of the sum of Payment Period Settlement Amount for each qualifying Class Member into the Settlement Fund as set forth in Section 6.9.

**6.3.9.**   To administer the Expedited Appeals Procedure as set forth in Section 6.8.

**6.3.10.** The Fund shall cooperate with the Settlement Administrator and provide information responsive to reasonable requests from the Settlement Administrator.

**6.4.**     **Eligibility Rules.**   To obtain a Settlement Award, a Class Member must comply with each of the eligibility rules in Sections 6.4.1 through 6.4.5.   Subject to the exception in Section 6.4.6, a Class Member's failure to comply with any of these rules provides an independent basis to deny his or her application for a Retroactive Claim.

**6.4.1.**   The Class Member's Application and supporting documentation (or, in the case of a Class Member In Pay Status, information provided to the Pension Fund in connection with a prior pension application) must establish the condition set forth in clause (a) of Section 1.15.

**6.4.2.**   Unless the Class Member is a Class Member In Pay Status, the Class Member must submit an Application to the Settlement Administrator on or before the Application Deadline, which is hereby defined as the date ninety (90) days after the mailing of the Notice.   Although the proper addressee for such an Application is the Settlement Administrator, a Class Member will be deemed to have met the condition in this subparagraph if he or she submits the Application directly to the Pension Fund on or before the Application Deadline.   An Application will be deemed timely in this regard if it is postmarked, emailed or faxed to the Settlement Administrator or Pension Fund on or

before the Application Deadline.

**6.4.3.**   Unless the Class Member is a Class Member In Pay Status, the Class Member must provide all personal documentation necessary for the eligibility determination and benefits calculation (including, for example, birth certificates, divorce decrees, and marriage certificates) by the Completed Application Deadline, which is hereby defined as the later of the Application Deadline or seventeen (17) days after the Settlement Administrator mails a Notice of Deficiency to the Class Member.

**6.4.4.**   The Payment Period Settlement Amount must be greater than zero.

**6.4.5.**   A Class Member who claims to be a beneficiary, spouse, or survivor of a participant must provide the proper documentation to establish that fact, unless all necessary documentation was previously submitted in support of an application for survivor benefits.

**6.4.6.**   Any Class Member who fails to submit his or her Application by the Application Deadline or the Completed Application Deadline will not be barred from eligibility for a Settlement Award by application of Section 6.4.2 and Section 6.4.3 (requirements which do not apply, in any event, to Class Members In Pay Status), if the Class Member submits a Complete Application which is received by the Settlement Administrator or Pension Fund on or before the later of (a) 30 days after the Application Deadline or (b) the date on which the Fund has finished making all initial determinations with respect to those Applications that were submitted on or before both the Application Deadline and the Completed Application Deadline.  However, if this provision applies to allow a Class Member's Application that otherwise would be ineligible under Section 6.4.2 or Section 6.4.3, that Class Member shall be deemed to have waived any appeal from the Fund's determination as to eligibility or amount, whether under Section 6.8 or

otherwise; as to such Applications, the Fund's initial determination will be final and binding.

**6.5.     Amount of Settlement Award.**  The amount of the Settlement Award payable to any particular Class Member will be equal to the Payment Period Settlement Amount (as defined in Section 6.6) less Proportional Administrative Expenses (as defined in Section 6.7).

**6.6.     Payment Period Settlement Amount**.  For Class Members entitled to recover incidental monetized relief, the amount of that incidental monetized relief shall be calculated as follows.  The calculation of the Payment Period Settlement Amount for each Class Member is to first take the amount of Golden 80 or 90 benefits that would have been payable to the Class Member during the Payment Period but for the 2012 Amendment ("the Initial Benefit Amount"), then deduct the amount of benefits that the Class Member actually received from the Pension Fund during the Payment Period and then to multiply the difference by thirty-seven percent (37%).  This amount will then be reduced by the Class Member's Proportional Administrative Expenses described in Section 6.7.

**6.6.1.   No Interest.**  There shall be no addition of interest in calculating a Class Member's Payment Period Settlement Amount.  Nor will Defendants have any obligation to pay any other form of interest under this Settlement Agreement, including on the Settlement Awards.

**6.6.2.   Other Plan Rules Apply.**  In calculating the Payment Period Settlement Amount for each Class Member, the Pension Fund will not apply the 2012 Amendment but will apply other Plan Rules, including those rules (aside from the 2012 Amendment) adopted in the 2012 Rehabilitation Plan that affect the eligibility for or amount of a Golden 80 or 90 benefit, except to the extent that those Plan Rules have been superseded by this Settlement Agreement.  (For example, an applicant who turned 66 years old on

February 1, 2014 and who had exactly 14 years of pension credit will not be treated as having aged into a Golden 80 benefit as of that date and will thus not be eligible for a Settlement Award by application of the rule in the 2012 Rehabilitation Plan increasing, effective January 1, 2014, the required minimum years of covered employment from 10 to 15 years.   However, an identically situated applicant who turned 66 years old on February 1, 2013 would be eligible for a Settlement Award (so long as that the Class Member met all other eligibility requirements under the Plan Rules and this Settlement Agreement).   This example is for illustrative purposes only and does not imply that the rule being demonstrated – *i.e.*, the rule in the 2012 Rehabilitation Plan increasing the required minimum years of covered employment – is the only such rule that will be applied to determine the Payment Period Settlement Amount.

     **6.6.3.   The Effect of a Survivorship Election.**   The Payment Period Settlement Amount for any Class Member who has elected to begin pension payments (e.g., in the form of an early retirement pension) before the Effective Date of Settlement will be calculated based upon the same form of monthly benefits that the Class Member elected for the pension payments that previously began, *i.e.*, whether a joint and survivor benefit (adjusted under § 6.05 of the Plan Rules), the Regular Option (defined as the form of benefit described in § 8.02(b)(iii) of the Plan Rules), or some other optional form.   Where the Class Member has not made any such election before the Effective Date of Settlement, he or she will be treated as having elected a Regular Option benefit for the purposes of calculating the Payment Period Settlement Amount.   (This method of calculating the Payment Period Settlement Amount will not limit the choices of optional forms of benefit that are available in the future to the Participant under the Plan Rules.)

     **6.6.4.   Surviving Spouses and Estates.** With respect to a Class Member who is a

beneficiary, spouse, or survivor of a participant, the following rules apply: (1) if the participant was (a) married as of the Presumed Pension Effective Date of his Golden 80 or 90 benefits or (b) died before such date but was married at the time of death, the Initial Benefit Amount will be calculated as monthly payments of a joint and survivor benefit beginning on the Presumed Pension Effective Date and lasting through the end of the Payment Period; (2) if the participant was unmarried as of the Presumed Pension Effective Date of his Golden 80 or 90 benefits, the Initial Benefit Amount will be calculated as monthly payments of a Regular Option benefit beginning on the Presumed Pension Effective Date and lasting through the end of the Payment Period or for thirty-six months, whichever period is shorter.

**6.7.    Proportional    Administrative    Expenses.**    "Proportional    Administrative Expenses" shall mean the proportional amount of the Gross Administrative Expenses that will be attributed to each Class Member Recovering Incidental Monetized Relief and deducted from that member's Payment Period Settlement Amount to determine the amount of that member's Settlement Award, as calculated under this Section.

**6.7.1.  Gross Administrative Expenses.**  Gross Administrative Expenses are calculated as follows.  First, calculate the sum of (a) all of the Settlement Administrator's expenses, including those paid and those anticipated and (b) any attorneys' fees and class representative fees awarded by the Court.  Second, subtract from that sum the administrative expenses and attorneys' fees, if any, that have been paid by the Pension Fund or the Pension Fund's insurance.

**6.7.2.  If There Is One Distribution.**  If there is only one distribution under Section 6.9.3, the amount of each individual's Proportional Administrative Expenses will be calculated by dividing the individual's Payment Period Settlement Amount by the total

sum of all Payment Period Settlement Amounts, and then multiplying the resulting fraction by the Gross Administrative Expenses.

**6.7.3.  If There Are Two Distributions.**  If there are two distributions under Section 6.9, the Settlement Administrator shall estimate the remaining Gross Administrative Expenses and calculate the Proportional Administrative Expenses by using the Pension Fund's estimated Payment Period Settlement Amount (provided under Section 6.3.1) as the basis for estimating the remaining Settlement Awards to be paid in the Second Distribution.

**6.8.     Expedited Appeal Procedure.**  Class Members In Pay Status and Class Members who submitted Applications that met both the Application Deadline and the Completed Application Deadline shall have a right to appeal the Fund's determination with respect to the Statement of Calculated Benefit (for Class Members In Pay Status) and with respect to the Application (for other Class Members) as set forth in this section.  Representative Plaintiffs, on behalf of themselves and the Class, hereby agree that the procedures set forth herein will be exclusive under this Settlement Agreement and waive any procedural rights they might otherwise have had under ERISA, or any other applicable law or the Plan Rules, to appeals procedures that differ from those set forth herein.

**6.8.1.**  Within forty-five (45) days after the Settlement Administrator mailed either the Statement of Calculated Benefit (for Class Members In Pay Status) or the determination concerning the Application (for other Class Members), a Class Member may appeal the determination concerning eligibility or amount by submitting a Determination Appeal that is received by the Settlement Administrator before the deadline.  (Both initial determinations of Applications and Statements of Calculated Benefits shall advise Class Members of the specific date by which the appeal must be

received by the Settlement Administrator.) The Settlement Administrator will transmit the Determination Appeal to the Appeals Committee of the Pension Fund within two (2) business days or as soon as practicable. The Determination Appeal must fully set forth the grounds for appealing the determination, and it must attach all of the documentation upon which the appeal relies. Any ground not identified in the Determination Appeal is expressly waived by the Class Member.

**6.8.2.** The Appeals Committee of the Pension Fund will rule on the appeal within seventy-five (75) days after receiving the Determination Appeal. The Appeals Committee will promptly notify the appealing Class Member, Class Counsel, and the Settlement Administrator of its ruling. In the notification sent to the Class Member, the Fund shall advise the Class Member of the specific date by which the Class Member must seek review under the next subsection.

**6.8.3.** If the appeal in the previous subparagraph is denied, the Class Member may seek review of the Appeals Committee's determination by filing a motion to the Court in the Action within seventy-five (75) days after notice of the Committee's decision is mailed to the Class Member. Any such motion must be limited to the arguments raised in the Determination Appeal, and the Class Member will be foreclosed from relying on evidence that was not submitted with the Determination Appeal. Absent a separate Court order, such a motion must contain all arguments advanced by the appealing Class Member and must contain as an exhibit the full Determination Appeal and supporting documents. The Pension Fund will be permitted an opposition; and the appeal will be resolved on the papers, without a hearing. The standard of review on any such motion will be for abuse of discretion. The Court's ruling on such a motion will be conclusive, and the Parties waive any right to appeal from it.

**6.8.4.**  All Class Members In Pay Status will have had the period of 180 days normally allowed under the Plan Rules for an appeal challenging the amount of credited service that the Pension Fund used in calculating benefits.  Except for any such appeals that were timely submitted under those Plan Rules, Class Members In Pay Status are barred from making any additional appeal from that determination under this Settlement Agreement.

**6.9.    Distributions from the Settlement Administrator.**    There may be two distributions of Settlement Awards to Class Members (excluding the final distribution described in Section 6.9.7):  the "First Distribution Date" and the "Second Distribution Date," as set forth in this section.  The First Distribution Date will take place within thirty (30) days after the later of (a) the date on which the Order and Judgment becomes Final, and (b) the date on which a judicial ruling on Class Counsel's request for a fee award becomes Final.   The Second Distribution Date will take place as soon as practicable after the later of the First Distribution Date and the date on which all determinations concerning Settlement Awards have become Final.

**6.9.1.  First Distribution.**  The first distribution will include Settlement Awards to Class Members In Pay Status as to which no appeal under Section 6.8 was taken, as well as all Settlement Awards that are Final and funded by the Pension Fund's deposit into the Settlement Fund as of the First Distribution Date.  As soon as practicable after receiving the Fund's calculations of Payment Period Settlement Amounts for Class Members In Pay Status, the Settlement Administrator shall review the calculations. And as soon as practicable after the First Distribution Date, the Settlement Administrator shall review the Fund's calculations of Payment Period Settlement Amounts for the Class Members who submitted Applications and as to whom there are Settlement Awards that have become Final.    Should the Settlement Administrator identify any error or

discrepancy in either calculation as to a particular Class Member's Settlement Award, the Settlement Administrator shall, within fourteen (14) days after receiving the calculation, provide notice of said discrepancy to Class Counsel and Counsel for Defendants and Class Counsel and the Counsel for Defendants shall confer within seven (7) days after being notified of the discrepancy in an attempt to resolve the difference in calculations. If the Parties are unable to resolve the matter at this meeting, that Class Member shall not be included within the First Distribution and Class Counsel will have an additional twenty-one (21) days to file a motion in this Action to seek what they consider the proper calculation of Payment Period Settlement Amount.  Class Counsel shall then file a motion with the Court seeking permission for the Settlement Administrator to distribute the Settlement Awards to Class Members Recovering Incidental Monetized Relief in this first distribution and to further distribute any common-fund attorneys' fees awarded to Class Counsel with respect to the first distribution.  Within three (3) business days after the Court's granting such motion, the Pension Fund shall deposit in the Settlement Fund the Payment Period Settlement Amounts associated with those Class Members Recovering Incidental Monetized Relief in this first distribution as to whom the Pension Fund has not yet deposited the associated Payment Period Settlement Amounts (as the Pension Fund is required to do for Class Members In Pay Status under Section 6.3.7), and promptly thereafter the Settlement Administrator shall disburse the Settlement Awards and attorneys' fees.

      **6.9.2.   Second Distribution.** The second distribution will include all Settlement Awards that are due but have not yet been paid in the First Distribution.  Within ten (10) business days after the Second Distribution Date, Class Counsel shall file a motion with the Court seeking permission for the Settlement Administrator to distribute the

Settlement Awards in the second distribution to Class Members Recovering Incidental Monetized Relief and to further distribute any additional common-fund attorneys' fees awarded to Class Counsel.  Within three (3) business days after the Court's granting such motion, the Pension Fund shall deposit in the Settlement Fund the Payment Period Settlement Amounts associated with those Class Members Recovering Incidental Monetized Relief in this second distribution, and promptly thereafter the Settlement Administrator shall disburse the Settlement Awards and attorneys' fees.

  **6.9.3.   Combined Distribution Date.**  In the event that all determinations have been made and all appeals have been decided before the Order and Judgment becomes Final, there shall be only one distribution, which shall be conducted in accordance with Section 6.9.1.

  **6.9.4.   Tax  Reporting.**   The  Settlement  Administrator  is  responsible  for complying with all tax reporting and withholding obligations for payments it distributes. Neither Defendants, their counsel, nor Class Counsel have responsibility, nor shall they have any liability for, any taxes or tax expenses owed by Class Members, or any tax reporting obligations of Class Members.

  **6.9.5.   Additional  Requirements.**   In making disbursements, the Settlement Administrator will distribute payments in accordance with qualified domestic relations orders, consistent with the Pension Fund's normal procedures concerning such orders. The  Settlement  Administrator  will  also  disburse  Settlement  Awards  with  appropriate waivers concerning the lump sum payment, complying with the associated requirement of a relative value notice that offers the payee the option of taking the actuarial equivalent of the  settlement  share  in  the  form  of  annuity  beginning  immediately.   The  Settlement Administrator will also provide the required tax notice that the payment is eligible for

rollover distribution and, if not rolled over, will be subject to withholding. To the extent that a Class Member In Pay Status does not provide the Settlement Administrator with a required waiver or take such other action as may be required to claim the Settlement Award, the Settlement Administrator shall hold the Class Member's Settlement Award for a period of six (6) months after it mailed the Class Member the instructions for the waiver and for claiming the Settlement Award. During this time period, the Settlement Administrator shall attempt to contact the Class Member at least twice, including at least once by mail and once by telephone. If the six-month period elapses without the Class Member taking the required action, the unclaimed Settlement Award will be handled in accordance with Section 6.9.7.

**6.9.6.**   Receipt of a Settlement Award will not give any Class Member a right to a Golden 80 or 90 Benefit for any period of time after the end of the Payment Period if such a benefit is not payable under the Plan Rules, nor will it affect in any way the Plan Rules (a) with respect to eligibility for or the amount of any pension that has a Pension Effective Date on or after June 1, 2016, or (b) with respect to the right to continue receiving a pension that has a Pension Effective Date before June 1, 2016, or the amount of such pension after the Payment Period.   Any Class Member Recovering Incidental Monetized Relief who is not a Class Member In Pay Status will be required, upon reaching eligibility, to submit an application for a pension in accordance with the Plan Rules, and the Class Member's receipt of a Settlement Award will create no right to a Pension Effective Date that is earlier than that which is independently determined under the Plan Rules.

**6.9.7.  Unclaimed  and  Remaining  Funds.**     Because  the  Settlement Administrator  must  estimate  future  administrative  costs  and  do  so  in  a  conservative

manner that ensures that such sums will cover the full future cost of its duties and because some Class Members may not take the required actions in Section 6.9.5 to claim their Settlement Awards, it is possible that there will be money remaining in the Settlement Fund when all of the distributions have concluded and the Settlement Administrator has fully performed its duties under this Settlement Agreement and has been reimbursed for all of its fees and expenses. To the extent any money remains in the Settlement Fund after the waiting period described in Section 6.9.5 has elapsed as to all of the unclaimed Settlement Awards distributed in connection with the Second Distribution Date or the Combined Distribution Date, the remaining money will be distributed to the Class Members Recovering Incidental Monetized Relief who cashed or deposited their Settlement Award checks, in proportion to their Settlement Awards, unless the costs of making a supplemental distribution would not permit meaningful payments to the Class Members Recovering Incidental Monetized Relief, in which case Class Counsel shall file a motion seeking to distribute the remaining funds in an appropriate manner and then to distribute the remaining balance in accordance with this Court's Order. Pursuant to this Court's Order (Dkt. 123), Defendants have waived any right to reversion or return of any monies remaining in the Settlement Fund after the distributions made pursuant to the Stipulation of Settlement.

**7.      TERMINATION OF THE SETTLEMENT AGREEMENT**

        **7.1.      Termination**.  This Settlement Agreement shall be terminated under any one of the following circumstances:

                **7.1.1.**  If the Court declines to approve the Settlement, or if the Order and Judgment is reversed on appeal, and if the order or mandate declining or reversing approval has become Final, then this Settlement Agreement shall automatically terminate

thirty (30) days after such order or mandate becomes Final.

**7.1.2.**  If (i) the Court enters an order modifying the *economic* terms of this Settlement Agreement or materially modifying any term of the Order and Judgment or Settlement Agreement, and (ii) within thirty (30) days after the date of any such ruling, or within thirty (30) days after the date of the Court's order following a motion for reconsideration of any such ruling, whichever is later, any Party detrimentally affected by the modification(s) gives notice to the other Parties declining to waive its objections to the modifications, then this Settlement Agreement shall automatically terminate on the twentieth (20th) day after the date on which such notice is given. The Parties may extend any time period in clause (ii) by mutual agreement in writing.

**7.2.**     **Returning the Advance Payment.**   Any other provision in this Settlement Agreement notwithstanding, if the Settlement Agreement is terminated, the Settlement Administrator will return to the Fund the $500,000.00 advance payment made to it less all reasonable expenses incurred by the Settlement Administrator until the date on which the Settlement Administrator was provided notice that the Agreement terminated.  In such event, the Fund will not be liable for any expenses beyond the advance payment.

**8.     CLASS COUNSEL'S ATTORNEYS' FEES AND EXPENSES**

Class Counsel may apply to the Court no later than fifty-six (56) days prior to the Fairness Hearing for an award of attorneys' fees and expenses, including for the Settlement Administrator's fees and expenses.  Defendants retain all rights with respect to opposing Class Counsel's application for fees and expenses, except that Defendants waive any argument that would be inconsistent with the Settlement Agreement.  (For example, an argument that common-fund attorneys' fees should not be awarded because of the character of the Settlement Fund as a sub-trust of the Pension Fund would be foreclosed by the Parties' agreement, in Section 1.57,

that the sub-trust may be used to defray the "reasonable expenses of administering those benefits and the sub-trust, which are understood to include the attorneys' fees, if any, awarded by the Court upon application by Class Counsel as provided in Article 8.")

As part of Class Counsel's application to the Court under this Section, Class Counsel may apply for compensation for Class Representatives to be paid from the Settlement Fund. These fees will be limited to seeking compensation for the actual time and expense that each Class Representative dedicated to the Action, as demonstrated by declaration or affidavit, and in no event will a Class Representative's compensation exceed $1000.

## 9.    MISCELLANEOUS PROVISIONS

**9.1.    Governing Law**.  This Settlement Agreement shall be governed by the laws of the State of California without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**9.2.    Best efforts**.    Class Counsel, counsel for Defendants, the Fund, and the Settlement Administrator will use their respective best efforts to meet all deadlines under this Agreement.

**9.3.    Return of Materials**.  Except for attorney notes, pleadings, transcripts, and other court submissions and exhibits thereto, each Party that received confidential material, including confidential material contained in formal and informal discovery, and information provided for purposes of settlement, and all other confidential material, from an opposing Party in the course of litigating this Action shall, within thirty (30) days after the Effective Date of Settlement, at the opposing Party's option, either:  (i) return all such materials in its custody or control, including in the possession of consultants of the opposing Party, to the producing Party; or (ii) certify that all such materials in its custody or control, including in the possession of consultants of the

opposing Party, have been destroyed; provided that if a Party requests the physical return of its materials, that Party shall reimburse the returning Party for its reasonable costs of assembling and shipping such materials.

**9.4.    Severability**.  Except as provided in Section 7.1.2 and Section 9.5, the provisions of this Settlement Agreement are not severable.

**9.5.    Amendment**.  Before entry of the Order and Judgment, the Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties.  Following entry of the Order and Judgment, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties and approved by the Court.

**9.6.    Waiver**.  The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party.  The waiver by any party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

**9.7.    Construction**.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

**9.8.    Principles of Interpretation**.  The following principles of interpretation apply to this Settlement Agreement.

**9.8.1.  Capitalization.**  Capitalized terms are to be understood according to their definitions in Article 1.

**9.8.2.  Headings**.  The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

**9.8.3. Singular and Plural**. Definitions apply to the singular and plural forms of each term defined.

**9.8.4. Gender**. Definitions apply to the masculine, feminine, and neuter genders of each term defined.

**9.8.5. References to a Person**. References to a Person are also to the Person's Successors-In-Interest and to anyone acting on behalf of the Person or the Successor-In-Interest.

**9.8.6. Terms of Inclusion**. Whenever the words "include," "includes" or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

**9.9. Further Assurances**. Each of the Parties agrees, without further consideration and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

**9.10. Survival**. All releases, representations, warranties and covenants set forth in this Settlement Agreement (including Articles 3 and 4 hereof) shall be deemed continuing and shall survive the Effective Date of Settlement.

**9.11. Notifications**. Any notice, demand or other communication under this Settlement Agreement (other than objections (Section 2.1.4) and the Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, sent by e-mail, or delivered by reputable express overnight courier:

IF TO NAMED PLAINTIFFS:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Judith L. Spanier
Nancy Kaboolian
ABBEY SPANIER, LLP
212 East 39th Street
New York, New York 10016
Telephone:  (212) 889-3700
Facsimile:  (212) 684-5191
Email:  jspanier@abbeyspanier.com

Geoffrey V. White
LAW OFFICE OF GEOFFREY V. WHITE
21-C Orinda Way #324
Orinda, California 94563
Telephone:  (415) 373-8279
Facsimile:  (415) 484-7692
Email:  gvwhite@sprynet.com

Thomas O. Sinclair
SINCLAIR LAW FIRM LLC
2100-A SouthBridge Pkwy, Suite 336
Birmingham, Alabama 35209
Telephone:  (205) 868.0818
Facsimile:  (205) 868.0894
Email:  tsinclair@sinclairlawfirm.com

William D. Frumkin
Elizabeth Hunter
FRUMKIN & HUNTER LLP
1025 Westchester Avenue, Suite 309
White Plains, New York 10604
Telephone:  (914) 468-6096
Facsimile:  (914) 468-6099
Email:   wfrumkin@frumkinhunter.com
Email:   ehunter@frumkinhunter.com

IF TO DEFENDANTS:

Emily P. Rich
Concepción E. Lozano-Batista
WEINBERG, ROGER & ROSENFELD, P.C.
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
Telephone:  (510) 337-1001
Facsimile:  (510) 337-1023
Email:  erich@unioncounsel.net
Email:  clozano@unioncounsel.net

Julia Penny Clark

1

2

3

4

5

6

                              Robert Alexander
                              James Graham Lake
                              BREDHOFF & KAISER, P.L.L.C.
                              805 Fifteenth St. N.W. Tenth Floor
                              Washington, DC 20005
                              Telephone:  (202) 842-2600
                              Facsimile:  (202) 842-1888
                              Email:  jpclark@bredhoff.com
                              Email:  ralexander@bredhoff.com
                              Email:  glake@bredhoff.com

7

8

      Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

9

10

      **9.12.   Entire Agreement**.  This Settlement Agreement contains the entire agreement

11

among the Parties relating to this Settlement.  It specifically supersedes the Stipulations of

12

Settlement dated October 26, 2016 and December 20, 2016 and any other settlement terms or

13

settlement agreements relating to the Defendants that were previously agreed upon orally or in

14

writing by any of the Parties.

15

16

      **9.13.   Counterparts**.  This Settlement Agreement may be executed by exchange of

17

faxed or electronically transmitted (.pdf) executed signature pages, and any signature transmitted

18

by facsimile or .pdf for the purpose of executing this Settlement Agreement shall be deemed an

19

original signature for purposes of this Settlement Agreement.  This Settlement Agreement may

20

be executed in two or more counterparts, each of which shall be deemed to be an original, but all

21

of which, taken together, shall constitute one and the same instrument.

22

23

      **9.14.   Binding Effect**.  This Settlement Agreement binds and inures to the benefit of all

24

Parties hereto, their assigns, heirs, administrators, executors, successors, spouses and other

25

beneficiaries.

26

      **9.15.   Agreement Execution Date**.  The date on which the final signature is affixed

27

below shall be the Agreement Execution Date.

28

---

1    IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set

2    forth below.

3

4    DATED:  February 24, 2017                    ABBEY SPANIER LLP
                                                  FRUMKIN & HUNTER LLP
5                                                 LAW OFFICE OF GEOFFREY V. WHITE
                                                  SINCLAIR LAW FIRM LLC
6
                                          By:     /s/  Thomas O. Sinclair
7                                                 WILLIAM D. FRUMKIN (*admitted pro hac vice*)
                                                  ELIZABETH E. HUNTER (*admitted pro hac vice*)
8                                                 NANCY KABOOLIAN (*admitted pro hac vice*)
                                                  THOMAS O. SINCLAIR (*admitted pro hac vice*)
9                                                 JUDITH L. SPANIER (*admitted pro hac vice*)
                                                  GEOFFREY V. WHITE
10
                                                  *Attorneys for Plaintiffs and Class*
11

12   DATED:  February 24, 2017                    BREDHOFF & KAISER, PLLC
                                                  WEINBERG, ROGER & ROSENFELD
13
                                          By:     /s/  Julia Penny Clark
14                                                ROBERT ALEXANDER (*admitted pro hac vice*)
                                                  JULIA PENNY CLARK (*admitted pro hac vice*)
15                                                JAMES GRAHAM LAKE (*admitted pro hac vice*)
                                                  CONCEPCIÓN E. LOZANO-BATISTA
16                                                EMILY P. RICH

17                                                *Attorneys for Defendants*

18

19

20

21

22

23

24

25

26

27

28