EMILY P. RICH, Bar No. 168735
CONCEPCIÓN E. LOZANO-BATISTA, Bar No. 227227
WEINBERG, ROGER & ROSENFELD, P.C.
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, CA 94501
Telephone (510) 337-1001
Fax (510) 337-1023
E-Mail: erich@unioncounsel.net
clozano@unioncounsel.net

JULIA PENNY CLARK (*admitted pro hac vice*)
ROBERT ALEXANDER (*admitted pro hac vice*)
JAMES GRAHAM LAKE (*admitted pro hac vice*)
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth St. N.W. Tenth Floor
Washington, DC 20005
Telephone (202) 842-2600
Fax (202) 842-1888
E-Mail: jpclark@bredhoff.com
ralexander@bredhoff.com
glake@bredhoff.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN M. REYES, SALVATORE TAGLIARENI, ANGEL DE LA CRUZ, ANTONIO MEROLLA, SMAIL MUSOVIC, TESFAYE GHEBREMEDHIN, PHILIP ROGERS, ALMOND REID, CARMELO CALABRO, RUSSELL NEUBERT, and JOHN WILLIAMS, individually and as representatives on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND; and STEVEN BERTELLI, DAVID B. DURKEE, JETHRO A. HEAD, ART MONTMINY, JAMES RIVERS, RANDY D. ROARK, BARBARA BRASIER, TRAVIS CLEMENS, JON MCPHERSON, LOU MINELLA, DOUG RUYGROK, and JOHN WAGNER, in their official capacities as Trustees,<br><br>Defendants. | Case No. 3:14-cv-5596 (JST)<br><br>**DEFENDANTS' RESPONSE TO CLASS COUNSEL REPORT (DKT. 164)**<br><br>The Honorable Jon S. Tigar |

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

DEFS.' RESP. TO CLASS COUNSEL REPORT
Case No. 3:14-cv-5596 (JST)

In its September 28, 2017 Minute Order following the class action settlement fairness hearing, the Court ordered Plaintiffs "to file a statement that includes the following: Total number of claims submitted, total number of claims paid, the total amount of money paid, and whether any claims remain outstanding," Dkt. No. 158, and on October 11, 2017 the Court further ordered Plaintiffs to "file itemized documentation supporting their claimed costs," Dkt. 162. Class Counsel have taken the Court's orders as an opportunity to file a brief to this Court in which they raise new legal arguments, supported by citation to new cases not previously cited in their initial briefing concerning fees. *Compare* Dkt. 164 at 4-5, *with* Dkt. 134 *and* Dkt. 153. One argument in particular requires response: Class Counsel now argue that in "a common fund case, fees should be based on the totality of funds made available for the benefit of the class, regardless of whether class members file claims." Dkt. 164 at 4. While Class Counsel downplay the full implications of what they assert—stating only that the "same principles apply here" as in the newly cited cases, *id.* at 5—it is clear from their earlier characterization of the $12,168,789.21 estimate from Defendants' CAFA notice as "the amount made available to [the] Class" that Class Counsel seek to have this Court calculate and award a common fund fee using the CAFA estimate rather than the amount of money that is actually in the settlement fund. *Id.* at 3-5.

Though the position Class Counsel press in this argument would not affect the Pension Fund's liability in this case,[1] the authority upon which Class Counsel relies does not support their attempt to increase their fees, and to do so at the expense of the class. More particularly, Class Counsel's twelfth-hour argument, were it accepted, would have the effect of permitting Class Counsel to inflate substantially the percentage of their own recovery at the expense of the class

---

[1] The Settlement Agreement provides that the Pension Fund is financially responsible for "deposit[ing] the balance of the sum of Payment Period Settlement Amount[s] for each *qualifying* Class Member into the Settlement Fund," and, with the exception of Class Members in Pay Status, a Class Member can qualify for a Payment Period Settlement Amount *only by* submitting and completing a timely application that he or she supports with adequate documentation demonstrating his or her eligibility. Dkt. 125 ¶¶ 6.3.8, 6.4, 6.4.2, 6.4.3, 6.4.6 (emphasis added). In other words, this is *not* a settlement in which the parties bargained in advance for a common fund of a set amount of money; the agreement does not include a fixed fund that would settle all claims under the agreement or set a maximum liability for the Pension Fund. Rather, the common fund negotiated by this settlement is precisely the sum total of the amount actually deposited by the Pension Fund under the settlement formula.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

1

DEFS.' RESP. TO CLASS COUNSEL REPORT
Case No. 3:14-cv-5596 (JST)

1  members they represent. As explained in our prior submission, Defendants continue to believe
2  that any common fund fee is inappropriate here. *See* Dkt. 144 at 21-24. If the Court is to award a
3  common fund fee on top of a statutory fee, however, the class members deserve this fee to be
4  calculated based on the *actual common fund*.

5        The common fund created by this class settlement is *not* $12,168,789.21. That number
6  was merely an *estimate* of anticipated claims as set out in Defendants' CAFA notice. The parties
7  have always understood that the amount of claims under the settlement could be either *higher or*
8  *lower* than the estimate, depending on the number of valid claims and the amount of each claim.
9  *See generally* Dkt. 125.[2] Had it been higher, the Pension Fund would have paid additional money
10 under the Settlement Agreement and the "common fund" upon which Class Counsel would seek
11 to calculate common fund fees would be greater. *See* Dkt. 125 ¶ 6.3.8.  As it happens, however,
12 the number and magnitude of claims were lower than the estimate, and, as a consequence, the
13 common fund is also lower. Defendants expect that the actual settlement fund will equal a figure
14 between approximately $9.86 million and $10.38 million, depending on how many of the
15 outstanding applications result in settlement awards. Defendants stand ready to report the precise
16 figure to the Court promptly once determinations have been made with respect to all outstanding
17 applications and once any issues regarding the timeliness or processing of these applications have
18 been resolved.[3]

19       Class Counsel rely on three cases for the proposition that the common fund to be used as
20 the basis here to calculate their fee should be deemed $12,168,789.21. *See* Dkt. 164 at 4 (citing
21 *Boeing v. Van Gemert*, 444 U.S. 472 (1980); *Williams v. MGM-Pathe Commun. Co.*, 129 F.3d
22 1026 (9th Cir. 1997); *Lopez v. Youngblood*, No. CV-F-07-0474 (DLB), 2011 WL 10483569 (E.D.
23 Cal. Sept. 2, 2011)).  None supports this proposition.

24

---

[2] That the parties understood that the final sum of valid claims could be higher or lower than the CAFA estimate is clear, among other things, from the fact that the parties negotiated, in Section 6.2.2, that applications would be mailed to all Class Members falling within two years of qualifying as Probable Payees (a group whose potential claims were not factored into the CAFA estimate). Dkt. 125 ¶ 6.2.2.

[3] Class Counsel indicated they were contemplating filing a motion with the Court last week, *see* Dkt. 164 at 2 n.2, but have not done so.

**WEINBERG, ROGER &
ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

2

DEFS.' RESP. TO CLASS COUNSEL REPORT
Case No. 3:14-cv-5596 (JST)

*Boeing* involved a litigated judgment that awarded "a sum certain" to a class of plaintiffs. 444 U.S. at 479. In that case, unlike here, there was thus an actual "judgment fund" of a fixed amount ($3,289,359), and, also unlike here, "[n]othing in the court's order made [the defendant's] liability for this amount contingent upon the presentation of individual claims." *Id.* at 479, 480 n.5. Indeed, after remarking on this fact, the Court went so far as to say, "[t]hus, we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine." *Id.* at 480 n.5. The Seventh Circuit recently recognized the limits that the Supreme Court placed on its decision, noting that: "*Boeing* …remarks that the right of class members 'to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.' But in that case the 'harvest' created by class counsel was *an actual, existing judgment fund*." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (emphasis added). The Seventh Circuit in *Pearson* therefore evaluated the appropriateness of the fee in the context of the *actual recovery* by the plaintiffs in that case. *See id.* at 781 ("[T]he class received a meager $865,284. This means the attorneys' fees represented not 9.6 percent of the aggregate value but an outlandish 69 percent.").

*Williams* is equally inapt, since, contrary to the facts here, it involved an actual "$4.5 million settlement fund." 129 F.3d at 1027. What is more, the settlement agreement there specifically informed the defendants that "the class attorneys would seek to recover fees based on the entire $4.5 million fund." *Id.* The Settlement Agreement in this case, of course, does nothing of the sort. To the contrary, it creates a settlement fund from the aggregate of *qualifying* claims. *See* Dkt. 125 ¶ 6.3.8 (requiring the Pension Fund to "deposit the balance of the sum of Payment Period Settlement Amount[s] for each *qualifying* Class Member into the Settlement Fund" (emphasis added)). That settlement fund represents the only common fund from which any common fund award could, consistent with equitable principles, be made.

Finally, *Lopez*, an unpublished magistrate judge opinion, is both off the mark and unpersuasive. The parties in *Lopez* negotiated a settlement agreement that, unlike the Settlement Agreement here, placed a definitive maximum figure on the possible recovery by the plaintiff

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

3

DEFS.' RESP. TO CLASS COUNSEL REPORT
Case No. 3:14-cv-5596 (JST)

1  class. 2011 WL 10483569, at *2 ("[T]he parties have agreed to a maximum payout for each
2  class….The total amount paid to Post–Release Class Members is capped at $2,335,830.00….The
3  amount paid to Group Strip Search Class Members is capped at $2,016,000.00…."). The parties
4  also negotiated a $2 million attorneys' fee that was to be paid separate and apart from the
5  monetary compensation for the plaintiff class. *Id.* at *3. Magistrate Judge Beck, in approving the
6  parties' negotiated fee award and in doing so after the court had already approved the fairness of
7  the settlement, thus did not confront a circumstance, like here, in which awarding attorneys' fees
8  based on a possible (as opposed to an actual, existing) fund would have effectively reduced class
9  members' net settlement awards. Given the very different factual posture of the case, in analyzing
10 the agreed-to fee settlement, the court in *Lopez* had no cause to analyze the commonsense
11 limitations of *Williams* and *Van Gemert* described above.

As one court explained in rejecting precisely the argument Class Counsel makes here:

> In response to a hypothetical question which I posed …, plaintiff's attorney stated that he believed he would be entitled to the entire $1.5 million in fees even if only one [plaintiff] opted in to the settlement. While I applaud his chutzpah, I do not buy his reasoning. "In the typical common fund case ... there is an *actual fund, or at least a fixed amount of money representing the extent of the defendant's liability*. Here, the Settlement Agreement establishes neither; it simply provides that [defendant] will satisfy those claims that are made by eligible class members, while retaining any unclaimed benefits."

*Augustyniak v. Lowe's Home Ctr., LLC*, 102 F. Supp. 3d 479, 489-90 (W.D.N.Y. 2015)
(emphasis added) (quoting *Parker v. Time Warner Entertainment Co., L.P.*, 631 F. Supp. 2d 242,
265 (E.D.N.Y. 2009)). So too here: The CAFA notice estimate was neither "an actual fund" nor a
"fixed amount of money representing the extent of [Defendants'] liability." It was simply an
estimate. The actual settlement fund could have been higher or lower than the estimate, and such
an estimate offers no basis for Class Counsel to claim the settlement fund is higher than it actually
is. The actual fund in this case is the "Settlement Fund"—as defined in the Settlement
Agreement, *see* Dkt. 125 ¶¶ 1.57, 6.3.8—and it will consist of between $9.86 and 10.38 million.

The effect of calculating a common fund fee based on the $12.2 million estimate and not
the *actual* settlement fund would be to permit Class Counsel to recover a higher percentage of the
overall recovery. The $4,030,866.79 common fund fee award that Class Counsel seeks, while

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

4
DEFS.' RESP. TO CLASS COUNSEL REPORT
Case No. 3:14-cv-5596 (JST)

33% of the CAFA estimate, would in fact constitute between 39% and 41% of the actual settlement fund. That would mean that a Class Member qualifying for a $1,000 settlement award would receive a net award on the order of just $600 before subtracting his or her share of administrative expenses and adding back the pro rata share of whatever statutory fees this Court awards. Through this legerdemain, Class Counsel seek in effect to capture a substantially larger percentage of each Class Member's award than the Court otherwise would allow under Ninth Circuit common fund principles.

## CONCLUSION

For the foregoing reasons, to the extent the Court awards any common fund fee, the Court should calculate the common fund fee based on the actual settlement fund (i.e., the sum of qualifying claims made under the Settlement Agreement). Defendants stand ready to file a supplemental report with the Court providing the exact amount of the settlement fund following the Pension Fund's transmission of determinations on the applications that remain outstanding and the resolution of any issues concerning the timeliness or processing of these applications.

Respectfully submitted,

Dated: November 20, 2017

BREDHOFF & KAISER, PLLC
WEINBERG, ROGER & ROSENFELD

By:     */s/ Robert Alexander*
ROBERT ALEXANDER (*admitted pro hac vice*)
JULIA PENNY CLARK (*admitted pro hac vice*)
JAMES GRAHAM LAKE (*admitted pro hac vice*)
CONCEPCIÓN E. LOZANO-BATISTA
EMILY P. RICH

Attorneys for Defendants

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

5

DEFS.' RESP. TO CLASS COUNSEL REPORT
Case No. 3:14-cv-5596 (JST)

# CERTIFICATE OF SERVICE

Pursuant to Local Rule 5-5, I hereby certify that on November 21, 2017, the Order granting Defendants' Motion for Leave to File Defendants' Response to Class Counsel Report (Dkt. 169), Defendants' Response to Class Counsel Report, and this Certificate of Service were served via U.S. Mail on:

Laurie Janouski
246 Lake Joy Road
Perry, GA 31069

I certify under penalty of perjury that the foregoing is true and correct.

Dated: November 21, 2017

/s/ *Paula Seguin*
Paula Seguin

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

6
DEFS.' RESP. TO CLASS COUNSEL REPORT
Case No. 3:14-cv-5596 (JST)