UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN M. REYES, et al., | Case No. 14-cv-05596-JST |
| Plaintiffs, | |
| v. | **ORDER GRANTING FINAL APPROVAL AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** |
| BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND, et al., | |
| Defendants. | Re: ECF Nos. 132, 134 |

Before the Court are Plaintiffs' unopposed motion for final approval of the class action settlement, ECF No. 132, and Plaintiffs' opposed motion for attorneys' fees, costs, and incentive awards, ECF No. 134. The Court granted preliminary approval of the settlement on April 12, 2017, and held a fairness hearing on September 28, 2017. ECF Nos. 131, 158. The Court will grant the motion for final approval and grant in part and deny in part Plaintiffs' motion for attorneys' fees, costs, and incentive awards.

## I.      BACKGROUND

### A.      The Parties and Claims

Plaintiffs, participants in the Bakery and Confectionery Union and Industry International Pension Fund (the "Fund"), brought this action on behalf of themselves and similarly situated participants pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"). ECF No. 93 ¶ 1 (second amended complaint). Plaintiffs allege that Defendants – the Fund and its trustees – failed to comply with the requirements of ERISA and the Pension Protection Act of 2006 ("PPA") in adopting an amendment to the pension plan. Id.

The Fund is a multi-employer defined benefit pension plan that covers tens of thousands of

participants and beneficiaries throughout the United States.  Id. ¶¶ 24-25.  Under the terms of the

Fund, certain employers offered participants subsidized early retirement plans known as "Plan G"

(the "Golden 80 Plan") and "Plan C" (the "Golden 90 Plan").  Id. ¶ 28.  Under the Golden 80 Plan,

when a participant's age and service, in years and months, equal 80 years, the participant is

entitled to retire at the full benefit level, except that participants who entered the plan after

December 3, 1998, must have a minimum number of years of service.  Id.  Similarly, under the

Golden 90 Plan, when a participant's age and service, in years and months, equal 90 years, the

participant is entitled to retire at the full benefit level, except that participants who commenced

participation after December 3, 1998, must have a minimum number of years of service.  Id.

Before July 2010, participants who retired before normal retirement age without the

required 80 or 90 years of combined age and service could "age into" the benefit.  Id. ¶ 30.  In

other words, such a participant would begin receiving full retirement benefits when his or her

years of combined age and service reached the required number, without returning to work in

covered employment.  Id.  Similarly, when a participant died before reaching the necessary 80 or

90 years of combined age and service, the surviving spouse could receive the normal retirement

age pension when the participant spouse would have "aged into" the benefit.  Id. ¶ 31.

In July 2010, the Fund's trustees amended the Fund to eliminate the option to age into

these benefits.  Id. ¶ 32.  The 2010 Amendment required that a participant be employed with a

participating employer at the time he or she qualified for Golden 80 or 90 benefits.  Id.  Lawsuits

challenging this amendment were consolidated in the Southern District of New York.  Id. ¶ 34.

While this litigation was ongoing, Defendants distributed a "Notice of Critical Status," dated

April 27, 2012, announcing that subsidized early retirement benefits such as the Golden 80 and

Golden 90 Plans might be reduced or eliminated as part of a rehabilitation plan.  Id. ¶¶ 52-54.  In

the Rehabilitation Plan, dated November 7, 2012, the trustees adopted an amendment, effective

April 30, 2012, "as a contingent measure because of the pending court challenge to the earlier

amendment."  Id. ¶¶ 58-59.  This 2012 Amendment was identical to the 2010 Amendment.  Id.

¶ 59.  In May 2014, the Second Circuit affirmed the district court's decision to strike the 2010

Amendment, and the 2012 Amendment went into effect.  Id. ¶ 63.

Plaintiffs allege that the 2012 Amendment is "void for illegality under ERISA because it has neither been enacted nor effectuated in compliance with ERISA's provisions, including the provisions of the PPA which create a narrow exception to ERISA's anti-cutback scheme." Id. ¶ 1. More specifically, Plaintiffs assert that the 2012 Amendment is null and void because it illegally reduced or eliminated benefits without the Fund having first provided proper notice under ERISA § 305(e)(8)(C), or, in the alternative, because (1) the Fund failed to provide adequate information to the actuary "regarding projections of industry activity, including future employment and contribution levels," and (2) the trustees "breached their fiduciary duty by failing to monitor and oversee adequately the actions of the actuary who certified the Fund to be in critical status before taking action upon that certification." Id.

On April 26, 2016, the Fund adopted another amendment, effective June 1, 2016, which again eliminated the ability of certain plan participants to age into the Golden 80 and Golden 90 benefits. ECF No. 118 at 10. The 2016 Amendment is not at issue in this case.

**B.     Procedural Background**

Plaintiffs moved for class certification on July 23, 2015. ECF No. 64. On September 22, 2015, the Court granted Plaintiffs' motion and certified the following Rule 23(b)(1)(A) class:

> All participants in the Bakery and Confectionery Union and Industry International Pension Fund or, if deceased, their beneficiaries or Estates, who
>
> (i)     accrued (a) years of Covered Employment credits and (b) age credits towards eligibility for pension benefits under Plan C (also known as the "Golden 90") or Plan G (also known as "Golden 80"), and
>
> (ii)    who would be eligible for Plan C or Plan G benefits except that their age and years of service first totaled 80 (with respect to Plan G eligibility) or 90 (with respect to Plan C eligibility) on or after May 1, 2012, at a time when they were not working in covered employment.

ECF No. 72 at 8. Two days later, Defendants moved for judgment on the pleadings. ECF No. 73. The Court denied the motion as to Count I (Improper Notice), granted the motion as to the remaining counts, and gave Plaintiffs leave to amend Count II (Improper Certification of Fund). ECF No. 89 at 12. On April 5, 2016, Plaintiffs filed a second amended complaint. ECF No. 93.

3

The case settled before Defendants responded to Plaintiffs' amended claims.

Plaintiffs moved for preliminary approval of the class action settlement on December 20, 2016. ECF No. 118. The Court denied preliminary approval on January 11, 2017, noting a problematic reversion clause and several issues with the proposed class notice. ECF No. 123. After the parties' revised the settlement agreement, Plaintiffs submitted a renewed motion for preliminary approval, ECF No. 126, which the Court granted on April 12, 2017, ECF No. 131. The Court held a final fairness hearing on September 28, 2017. ECF No. 158. As ordered by the Court, class counsel filed a supplemental report concerning the claims process and documentation of claimed costs on November 9, 2017. ECF No. 164. Defendants oppose Plaintiffs' valuation of the common fund for purposes of calculating a percentage fee award. ECF No. 170.

### C.    Terms of the Settlement

The settlement agreement provides for both injunctive and monetary relief. First, "Defendants agree to the entry of a permanent injunction . . . which enjoins the Pension Fund from enforcing the 2012 Amendment with respect to Prospective Claims, and further enjoins the Fund from applying the 2012 Amendment to Retroactive Claims in a manner inconsistent with the Claims Procedures set forth in the Settlement Agreement." ECF No. 125 at 20.[1] The injunction does not affect the 2016 Amendment. Id. at 21.

The settlement also provides for monetary relief to certain class members. Specifically, the Fund will pay class members "who, but for the 2012 Amendment's prohibiting the Class Member from aging into the benefit, . . . would have been eligible for a Golden 80 or 90 benefit with a Pension Effective Date falling within the Payment Period [May 1, 2012, through May 31, 2016]." Id. at 8. Each class member's payment is calculated as follows:

> The calculation of the Payment Period Settlement Amount for each Class Member is to first take the amount of Golden 80 or 90 benefits that would have been payable to the Class Member during the Payment Period but for the 2012 Amendment ("the Initial Benefit

---

[1] "Prospective Claims" are "any claim or application filed by or on behalf of a participant or beneficiary for a Golden 80 or 90 benefit with a Pension Effective Date on or after June 1, 2016." "Retroactive Claims" are "any claim or application filed by or on behalf of a participant or beneficiary for a Golden 80 or 90 benefit with a Pension Effective Date after April 30, 2012 and on or before May 31, 2016." ECF No. 125 at 12-13.

Amount"), then deduct the amount of benefits that the Class Member actually received from the Pension Fund during the Payment Period and then to multiply the difference by thirty-seven percent (37%). This amount will then be reduced by the Class Member's Proportional Administrative Expenses described in Section 6.7.

Id. at 30.

The administrative process differs based on whether the class member did or did not receive a pension during the Payment Period. "Class Members in Pay Status," who received a pension during the Payment Period, do not need to fill out an application form to receive their payments. Id. at 28-29. Class members who did not receive a pension during the Payment Period must submit an application form to receive payment under the Settlement. Id. Application forms will be sent with the class notice to "Probable Payees," whom the Fund believes are likely to qualify for monetary relief based on review of its records, as well as those "whom the Fund identifies . . . as having been within two years of qualifying as a Probable Payee." Id. at 12, 22. At the time of preliminary approval, Plaintiffs estimated that Class Members in Pay Status would be guaranteed to receive $6,013,000, while $6,204,000 would be available to Probable Payees, for a total potential settlement amount of $12,217,000. ECF No. 118 at 13. The parties subsequently filed a stipulation that the total settlement amount is $10,225,006.20.[2] ECF No. 174 at 2. Payments to both groups will be reduced by the amount of any attorneys' fees, expenses, and incentive awards authorized by the Court to be paid out of the settlement fund. ECF No. 125 at 32. The settlement provides for an administrative remedy process to resolve disputes that includes a right to motions practice with this Court. Id. at 33-35.

The settlement also requires class members to release the following claims against "all Defendants and Trustees, as well as any other Person that at any time between January 1, 2012 and June 1, 2016 served as a named or functional fiduciary of the Pension Fund or as a Representative of any Defendant or Trustee":

---

[2] The final amount of the settlement fund may increase slightly. As the parties explain: "Because the settlement provides an administrative appeals process to class members who had their timely applications denied, additional funding may occur, subject to the terms of the Stipulation of Settlement, if any pending appeals are resolved in favor of the class members. If such additional funding occurs, the parties shall so inform the Court." ECF No. 174 at 2.

United States District Court
Northern District of California

> [A]ny and all actual or potential, known or unknown, claims (including but not limited to claims to the Pension Fund for benefits, as well as claims for attorneys' fees, expenses and costs), actions, damages, losses, causes of action, demands, obligations, and liabilities arising out of, or related to, the transactions or occurrences asserted in Plaintiffs' Original Class Action Complaint, Plaintiffs' First Amended Class Action Complaint, or Plaintiffs' Second Amended Class Action Complaint in the Action, including but not limited to (i) the determination that the Pension Fund was in critical status under ERISA Section 305 in the plan year 2012; (ii) plan amendments adopted in the 2012 Rehabilitation Plan affecting Golden 80 or Golden 90 benefits; and (iii) notice of such plan amendments; except that Released Claims do not include: (a) any rights or duties arising out of this Settlement Agreement, including the express warranties and covenants in this Settlement Agreement; (b) any right of Class Plaintiffs to apply for a class representative fee award and on Class Counsel's behalf for an award of attorneys' fees and expenses in the Action as set forth in Section 8; (c) any ERISA Section 502(a)(1)(B) claim for vested benefits by any Plan participant or beneficiary pursuant to the Plan Rules where such claims are unrelated to any matter asserted in this Action; and (d) any potential claims arising out of the 2016 Amendment and/or the 2016 Notice of Critical Status where such claims do not challenge the validity of the determination that the Pension Fund was in critical status under ERISA Section 305 in the plan year 2012 or the validity of plan amendments adopted in the 2012 Rehabilitation Plan affecting Golden 80 or Golden 90 benefits. With respect to Class Members other than the Class Representatives, in no event will the scope of the Released Claims be broader than the res judicata effect of a final judgment in this Action.

Id. at 16-17.

## II.   FINAL APPROVAL OF SETTLEMENT AGREEMENT

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. To assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004). There is no governmental

participant in this case, so the Court need not consider that factor.

**A.      Adequacy of Notice**

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice."  <u>Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco</u>, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court approved the parties' proposed notice procedures, ECF No. 131 at 2, after the parties corrected deficiencies previously identified by the Court, ECF No. 123 at 11-12.  Notice was carried out substantially in accordance with this plan.  ECF No. 132 at 13-14.  Strategic Claim Services ("SCS"), the settlement administrator, timely mailed the Court-approved notice to 46,150 out of 46,562 class members.  ECF No. 132-1 ¶ 4.  This list includes 44,046 class members who were mailed a class notice only; 789 "Class Members In Pay Status" who were mailed a class notice with an exemption letter explaining that they did not need to file an application to receive a payout;[3] and 1,727 "Probable Payee" and "Within Two Years" class members who were mailed both a class notice and an application form.  <u>Id.</u>  Six class members were mailed a late class notice and application form after class counsel assisted SCS with locating their addresses.  <u>Id.</u> ¶ 5.  This leaves 406 class members who were not mailed a notice because their addresses could not be located, even after "skip tracing the names with social security numbers using Experian."  <u>Id.</u>  In addition, 2,602 of the class notices were returned as undeliverable.  <u>Id.</u> ¶ 10.  Of those, 1,569 were re-mailed to addresses provided by the United States Postal Service or obtained through skip tracing via Experian.  <u>Id.</u>  Of the re-mailed notices, 87 were returned as undeliverable.  <u>Id.</u>

Thus, 1,526 class members, or approximately 3.3% of the class, did not receive a class notice by direct mail.  These class members received notice only via publication in <u>USA Today</u> on May 22, 2017.  ECF No. 132-1 ¶ 9.  SCS also established a website with the class notice and claims information, <u>id.</u> ¶ 8, and "was contacted by 95 individuals requesting Class Notices with Application Forms," ECF No. 156 ¶ 3.

On June 26 and July 13, 2017, SCS sent postcards reminding Probable Payees and Within

---

[3] Plaintiffs' motion for final approval erroneously asserts that 1,124 class members would receive a payout without needing to file an application.  ECF No. 132 at 6.

United States District Court
Northern District of California

Two Years class members to submit their application by the deadline.  ECF No. 132-1 ¶ 7.  On

July 31, SCS contacted or attempted to contact the 335 Probable Payees who had not yet filed an

application.[4]  Id.  To date, they have contacted 278 of these class members and have been unable

to contact 57.  ECF No. 156 ¶ 5.  Following these contacts, 172 Probable Payees had not filed an

application as of August 28, 2017, and SCS provided a list of these class members to class counsel

so that counsel could attempt to contact them.  Id. ¶ 6.

In light of these actions, and the Court's prior order granting preliminary approval, the

Court finds the parties have provided adequate notice to the settlement class members.

In addition, Defendants provided the required notice to federal and state attorneys general

under the Class Action Fairness Act, 28 U.S.C. § 1715(b), on March 13, 2017.  ECF No. 143-1

¶ 3.  This notice occurred more than 90 days before the date of this order, as required by 28 U.S.C.

§ 1715(d).

### B.    Fairness, Adequacy, and Reasonableness

#### 1.    Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely Duration of Further Litigation; and Risk of Maintaining Class Status Throughout Trial

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs

must overcome in making their case."  Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848,

851 (N.D. Cal. 2010).  Similarly, difficulties and risks in litigating weigh in favor of approving a

class settlement.  See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

This Court has already noted class counsel's acknowledgment that the Court might narrow

the scope of relief during the damages phase of the case, as well as counsel's consideration of the

financial position of the fund in assessing the value of settlement now.  ECF No. 123 at 7-8.  The

Court further observed that, "[w]hile Plaintiffs have already succeeded in obtaining class

certification, dispositive motions briefing and an eventual trial would surely prolong the wait class

members face to obtain relief."  Id. at 8.  Indeed, Defendants' response to Plaintiffs' motion for

---

[4] The declaration states that SCS attempted to contact "336 Probable Payees who have not yet filed an application," but then breaks that down into 224 contacted class members, 67 class members with pending contacts, and 44 class members that were unable to be contacted.  ECF No. 132-1 ¶ 7.  This totals 335 class members.

final approval makes clear that they would vigorously litigate this case if it did not settle.  ECF No. 143 at 4-11 (arguing that Counts II and III in the second amended complaint have no merit; that Defendants would appeal any judgment based on the legal conclusions in the Court's order denying judgment on the pleadings on Count I; and that full relief on Count I would likely be limited, at most, to 7.5 months of benefit payments).

Although there appears to be little risk that the class could not be maintained throughout the trial of this matter, the risks of pursuing the case through to a litigated conclusion are high.  In addition, any relief to the class would be significantly delayed, putting the likelihood of actual recovery in more doubt.  See ECF No. 132 at 19 ("Class Counsel also took into account the financial position of the Fund in determining that a settlement in the near term might be more beneficial to the Class than holding out for a judgment after trial and appeals that could extend out for many years.").  Accordingly, these factors weigh in favor of approving the settlement.

### 2.  Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting Officers for Justice, 688 F.2d at 628).  "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  Id. (citing Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998)).

In this case, class members are scheduled to receive 37% of the pension benefits they should have received during the four-year Payment Period had the 2012 Amendment not gone into effect, less a pro rata share of attorneys' fees and expenses.  The Court previously calculated the expected percentage recovery as being closer to 25% after this deduction, assuming that the Court granted counsel's request for a 33% fee award.  ECF No. 123 at 8.  The Court found "the question of adequacy [of the settlement amount] to be a close one, but particularly because two thirds of the class will receive payments on an expedited basis without the need to complete further claims paperwork, and in light of the expressed concerns about Defendant's financial condition, the Court

conclude[d] that a 25% recovery—or a recovery in that ballpark—is substantively reasonable and favors approval." Id.

The data provided by the settlement administrator indicates that only approximately one-third, and not two-thirds, of class members who are receiving payouts – 789 out of 2,516 – will receive a payment without the need to complete a claims form. ECF No. 132-1 ¶ 4. On the other hand, as discussed below, the Court will award only a 25% fee award from the common fund, and this amount will be offset by statutory fees paid by Defendants, so the overall amount available for class member payouts will be greater. The question remains a close one, but the Court concludes that the settlement amount is reasonable and favors approval.

### 3. Extent of Discovery

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).

Discovery in this case has included "six separate document productions from the Pension Fund and more than thirteen thousand three hundred (13,300) pages of document production." ECF No. 132 at 19. The case also "involved the use of an expert to provide opinions on the nature of the Pension Fund's defense to the Class Members' claims." Id. Discovery extended through mediation and "for nearly six months thereafter as settlement terms were discussed." Id. at 19-20. As this Court previously concluded, this discovery process was sufficient to allow the parties to make an informed settlement decision. ECF No. 123 at 9. This factor therefore weighs in favor of approval.

### 4. Counsel's Experience

Plaintiffs' counsel recommend that the Court approve the settlement. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). Counsel for both sides have substantial ERISA experience, and the settlement was reached after a full day of mediation with a JAMS mediator. ECF No. 132 at 16-17. This factor weighs in favor of

approval.[5]

## 5. Reaction of the Class

Finally, class members' positive reaction to a settlement weighs in favor of settlement approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted).

In this case, the Court received and filed correspondence from eleven class members.[6] ECF Nos. 135, 136, 140, 141, 142, 146, 154, 155, 161, 172, 176. The Court forwarded two other letters to class counsel. ECF Nos. 152-1, 152-2. Two class members withdrew their objections after class counsel worked with them to resolve their concerns. ECF No. 150 (withdrawing ECF No. 141); ECF No. 163 (withdrawing ECF No. 154). A third class member withdrew her correspondence, which was an appeal to the settlement administrator that was inadvertently sent to the Court. ECF No. 180 (withdrawing ECF No. 176). Ten letters remain for the Court to address.

One of the remaining letters raises concerns about a disability pension and does not concern the benefits at issue in this case. ECF No. 152-2. Two other letters also do not concern the settlement in this case and instead complain that the Fund has miscalculated their years of service. ECF Nos. 135, 161.

The remaining seven letters are properly construed as objections. This represents 0.015% of class members and 0.28% of class members receiving monetary relief under the settlement.

One objection misunderstood the class payout calculations. ECF No. 152-1. The objector incorrectly believed that he would "get as little as 5% of what I am entitled" after attorneys' fees were awarded. Id. at 4. He apparently deducted the 33% potential fee award from the 37%

---

[5] The Court considers this factor, as it must, but gives it little weight. "[A]lthough a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." Principles of the Law of Aggregate Litigation § 3.05 cmt. a (Am. Law. Inst. 2010).

[6] The Court considers all of these letters even though five – ECF Nos. 154, 155, 161, 172, 176 – were filed after the August 31, 2017 deadline to file objections. See ECF No. 131 at 2, 4 (setting deadline for objections as twenty-eight days before the September 28, 2017 fairness hearing).

calculated benefit to reach this conclusion. <u>See</u> <u>id.</u> at 3-4. Class counsel attempted to respond to the objector, <u>id.</u> at 2, who refused a certified mailing, <u>id.</u> at 1, and did not return any phone messages, ECF No. 152 at 3. It is not clear whether this class member would object to the settlement if he understood correctly the method used to calculate payments to the class.

Two objections concern the 2016 Amendment that is not at issue in this case. ECF Nos. 142, 146. As the Court previously explained, class members remain free to challenge the validity of the 2016 Amendment by filing another lawsuit, with or without counsel. ECF No. 151 at 2.

The objector who filed ECF No. 146 also filed a further objection, ECF No. 159, and appeared at the fairness hearing to object to the settlement, ECF No. 158. The further objection raises similar issues regarding the 2016 Amendment, but it also challenges the adequacy of class notice because it did not indicate that court documents from this or other cases could be obtained via PACER. ECF No. 159 at 7-8. Although this district's guidelines indicate that reference to PACER should be included in class action settlement notices, the Court does not find this omission to render the class notice inadequate. <u>See</u> United States District Court, Northern District of California, <u>Procedural Guidance for Class Action Settlements</u>, https://cand.uscourts.gov/ClassActionSettlementGuidance (last visited Dec. 15, 2017). Moreover, as the Court confirmed with the objector at the hearing, her primary objection is that she believed the settlement should also have included the 2016 Amendment.

Three remaining objections express dissatisfaction with the amount of the settlement, claiming that class members are receiving too little of the amounts to which they believe they are entitled. ECF Nos. 136, 140, 155. The final objection states an intent to "appeal the amount the lawyers will receive" and "appeal on the benefits [of] settlement," which the Court construes as an objection to the amount of the settlement. ECF No. 172 at 1. The Court acknowledges these objectors' frustrations but, as discussed above, nonetheless finds the settlement amount to be reasonable given the risks and delay of further litigation.

On balance, the Court concludes that the reaction of the class weighs in favor of approval. <u>See</u>, <u>e.g.</u>, <u>Churchill Vill.</u>, 361 F.3d at 577 (holding that approval of a settlement that received 45

objections (.05%) and 500 opt-outs (.56%) out of 90,000 class members was proper).

After reviewing all of the required factors, the Court finds the settlement fair, reasonable, and adequate, and grants Plaintiffs' motion for final approval of the settlement.

## III.    ATTORNEYS' FEES AND COSTS

Class counsel seek attorneys' fees both under the ERISA fee-shifting statute, 29 U.S.C. § 1132(g)(1), and as a percentage of the common fund in this case.  They do not seek double recovery, and they acknowledge that any statutory fee award paid by Defendants (or the Fund's insurance policy) "shall constitute a credit to any amount awarded to Class Counsel from the Settlement Fund as a percentage of the common fund."  ECF No. 134 at 11.

Relying on out-of-circuit precedent, Defendants argue that a common fund fee award is unavailable where, as here, the Court awards statutory fees.  ECF No. 144 at 25-27 (citing Haggart v. Woodley, 809 F.3d 1336 (Fed. Cir. 2016); Pierce v. Visteon Corp., 791 F.3d 782 (7th Cir. 2015); Brytus v. Spang & Co., 203 F.3d 238 (3d Cir. 2000)).  However, Defendants also recognize that the Ninth Circuit has not so held.  Id. at 25.  To the contrary, the Ninth Circuit has held that, "unless Congress has forbidden the application of the common fund doctrine in cases in which attorneys could potentially recover fees under the type of fee-shifting statutes at issue here, the courts retain their equitable power to award common fund attorneys' fees."  Staton v. Boeing Co., 327 F.3d 938, 968 (9th Cir. 2003).  "[T]here is no preclusion on recovery of common fund fees where a fee-shifting statute applies," id., and "common fund fees can be awarded where statutory fees are available," id. at 967.  See also In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011) ("The award of attorneys' fees in a class action settlement is often justified by the common fund or statutory fee-shifting exceptions to the American Rule, and *sometimes by both*." (emphasis added)).

Defendants do not argue that ERISA forbids common fund awards such that Staton does not apply.  They assert that, "[a]t most, *Staton* stands for the proposition that Plaintiffs' counsel may be awarded by the Court either a statutory fee award *or* a common fund award, but not both."  ECF No. 144 at 28.  But they cite no cases construing Staton in this manner, and courts in this circuit have held otherwise.  E.g., Sobel v. Hertz Corp., 53 F. Supp. 3d 1319 (D. Nev. 2014)

("Plaintiffs may seek additional attorney's fees out of the common fund irrespective of their entitlement to attorney's fees under the fee-shifting statute."); <u>Briggs v. United States</u>, No. C 07-05760 WHA, 2010 WL 1759457, at *8 (N.D. Cal. Apr. 30, 2010) (finding "no bar to awarding fees both under the [Equal Access to Justice Act, a fee-shifting statute] and from the common fund"). This Court likewise concludes that class counsel may be awarded fees from the common fund in addition to any award under ERISA's fee-shifting statute.

**A.    Statutory Fees and Costs**

The Court first considers Plaintiffs' claim for statutory fees. ERISA provides that "[a] court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C § 1132(g)(1). Defendants do not dispute Plaintiffs' entitlement to a statutory fee award, but they do argue that the amount of fees and costs claimed by class counsel must be reduced. ECF No. 144 at 5.

The Ninth Circuit has explained:

> To calculate attorney's fees awarded under § 1132(g)(1), district courts utilize a two-step hybrid lodestar/multiplier approach. First, the court establishes a lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed. In determining the appropriate lodestar amount, the district court may exclude from the fee request any hours that are excessive, redundant, or otherwise unnecessary. In addition to setting the number of hours, the court must also determine a reasonable hourly rate, considering the experience, skill, and reputation of the attorney requesting fees. Second, in rare and exceptional cases, the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation.

<u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 945-46 (9th Cir. 2007) (internal quotation marks and citations omitted).

Class counsel originally calculated the lodestar, including projected future hours, at $1,731,185.75. ECF No. 134 at 23. Their November 9, 2017 updated report calculated the lodestar at $1,806,471.00. ECF No. 164 at 4. Counsel request a multiplier of 1.25, ECF No. 134 at 27-29, yielding a requested enhanced lodestar of $2,258,088.75.

In addition, class counsel originally requested $307,518.87 in costs: $73,972.93, including

United States District Court
Northern District of California

an estimated $14,794.58 in future expenses, for counsel; and $233,545.94, including an estimated $80,000 in future expenses, for the settlement administrator. Id. at 30. They now seek $343,841.39 in costs: $73,425.20 for counsel and $270,416.19 for the settlement administrator. ECF No. 164 at 3. The settlement administrator estimates that it will incur another $29,000 in expenses through initial distribution, ECF No. 164-5 ¶ 4, bringing the estimated costs for the settlement administrator to $299,416.19, and the total costs to $372,841.39.

### 1. Hourly Rates

The reasonable hourly rate must be based on the "experience, skill, and reputation of the attorney requesting fees." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986), amended, 808 F.2d 1373 (9th Cir. 1987). Setting this rate is inherently difficult. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). To determine a reasonable hourly rate, the court looks to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Chalmers, 796 F.2d at 1210-11. The relevant community is typically the forum community. Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 906 (9th Cir. 1995). To inform and assist the Court in making this assessment, "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community." Blum, 465 U.S. at 895 n.11. An attorney's own declaration about the reasonableness of the claimed rate is itself insufficient to meet the plaintiffs' burden. Jordan v. Multnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987). Declarations by attorneys regarding the prevailing market rate in the community can suffice to establish a reasonable hourly rate. Widrig v. Apfel, 140 F.3d 1207, 1209 (9th Cir. 1989); see, e.g., Welch, 480 F. 3d at 947 (considering "declarations from comparable ERISA lawyers attesting" to market rate). Courts have the discretion to reduce the hourly rate for tasks that less skilled persons could have performed. Ferland v. Conrad Credit Corp., 244 F. 3d 1145, 1148 (9th Cir. 2001).

Plaintiffs claim hourly rates of $200 to $875 for attorneys, and $125 and $350 for paralegals, as follows:

/ / /

/ / /

15

| Timekeeper | Admitted to Bar | Hourly Rate |
|---|---|---|
| Judy Spanier | 1978 | $875 |
| Geoffrey V. White | 1975 | $700 |
| Bill Frumkin | 1987 | $700 |
| Nancy Kaboolian | 1989 | $700 |
| Tom Sinclair | 1999 | $625 |
| Natalie Marcus | 2004 | $540 |
| Elizabeth Hunter | 2005 | $500 |
| Lee Fernon | 2011 | $250 |
| Alexandra Manfredi | 2011 | $200 |
| Jenna Beirlein | 2014 | $200 |
| Yvonne Gadsen | Paralegal | $350 |
| Claudette Fowler | Paralegal | $125 |

ECF No. 134 at 23; ECF No. 134-2 ¶ 29; ECF No. 134-3 ¶¶ 2, 8, 10; ECF No. 134-4 at 17-19, 21; ECF No. 134-5 ¶ 2.

Defendants argue that the rates for Ms. Spanier, Mr. White, Mr. Frumkin, and Ms. Kaboolian should be reduced to $675, and that Ms. Gadsen's rate should be reduced to $125. ECF No. 144 at 13-16. Defendants do not contest the other claimed hourly rates, and the Court agrees that those rates are reasonable.

As to the claimed rates for Ms. Spanier, Mr. White, Mr. Frumkin, and Ms. Kaboolian, Defendants argue that the analysis should be limited to prevailing rates in the Northern District of California. The Court agrees. Although Plaintiffs cite to cases outside of this district that have considered a national market for ERISA attorneys rather than limiting their analysis to the local market, ECF No. 134 at 18-19, the Ninth Circuit has explained that "the relevant community [for purposes of determining reasonable hourly rates] is the forum in which the district court sits." Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997). Rates outside this district "may be used 'if local counsel was unavailable, either because they are unwilling or unable to perform because they

16

lack the degree of experience, expertise, or specialization required to handle properly the case.'"
Id. (quoting Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992)).  Plaintiffs have not
established that this exception applies in this case, where one counsel – Mr. White – was local; the
declaration of Glenn Kantor indicates that other ERISA lawyers practice in this district, ECF No.
134-3 ¶¶ 5, 9; and there is no evidence that Mr. Kantor or other local counsel were unavailable.  In
addition, both this Court and other courts in this district have considered the Northern District or
the San Francisco Bay Area as the relevant market when analyzing fees motions in ERISA cases.
E.g., Stewart v. Applied Materials, Inc., No. 15-cv-02632-JST, 2017 WL 3670711, at *10 (N.D.
Cal. Aug. 25, 2017) ("The declarations that the plaintiff has submitted sufficiently establish that
$700 per hour for Mr. Kassan and Mr. Glenn Kantor and $400 per hour for Mr. Rozell and
Mr. Andrew Kantor reflect the prevailing rates *in the Northern District* for comparable work."
(emphasis added)); Echague v. Metro. Life Ins. Co., 69 F. Supp. 3d 990, 997 (N.D. Cal. 2014)
(noting "testimony from ERISA specialists that $650 an hour is consistent with the prevailing
rates for ERISA litigation specialists *in the San Francisco Bay Area*" (emphasis added)).  The
Court therefore does not consider evidence of hourly rates charged outside of this area.

The declaration of Mr. Kantor, ECF No. 134-3, is sufficient to establish that the $700
hourly rate claimed by Mr. White, an attorney with 42 years of experience, is reasonable.
Likewise, this Court recently awarded Mr. Kantor, an attorney with 31 years of experience, a $700
hourly rate.  Stewart, 2017 WL 3670711, at *10.  Mr. Frumkin, Ms. Kaboolian, and Ms. Spanier
have between 28 and 39 years of experience, which is within the same range of experience as
Mr. Kantor and Mr. White.  Accordingly, the Court finds $700 to be a reasonable hourly rate for
these three attorneys as well.

Plaintiffs submit no evidence to establish that $350 is a reasonable hourly rate for
Ms. Gadsen's paralegal work, and the record is silent as to her amount of experience.  Given the
claimed associate rates of $200 per hour, and Ms. Fowler's paralegal rate of $125 per hour, the
Court reduces Ms. Gadsen's hourly rate to $125.

Ms. Spanier claims a total of 336.75 hours.  ECF Nos. 134-4 at 21 (254.75 hours), 164-1

¶ 3 (33.75 hours), 178 ¶ 2 (48.25 hours).[7]  Ms. Gadsen claims 36.75 hours.  ECF 134-4 at 21.  The reduction in hourly rates therefore results in a reduction in the lodestar of $67,200.

### 2.    Hours

Class counsel originally reported that they "have spent a total of 2,531.15 hours working on this case, plus an estimated 350 hours that will be required for future work."  ECF No. 134 at 23.  Their final claimed number of hours is 2,997.80.  ECF No. 164 at 4.  Defendants raise several objections to the number of hours claimed by class counsel.

### a.    Overstaffing/Duplicative Work

First, Defendants contend that the number of attorneys on this matter resulted in overstaffing and duplicative work.  A court may reduce the number of hours claimed by counsel "if the case was overstaffed and hours are duplicated [or] if the hours expended are deemed excessive or otherwise unnecessary."  Chalmers, 796 F.2d at 1210.  Defendants identify "783.2 hours billed by Class Counsel as to which there is a high likelihood that they engaged in duplicative work, most notably for correspondence and conferences among several various attorneys working on this matter, as well as attendance by multiple attorneys at court proceedings."  ECF No. 144 at 16-17.  These hours result in claimed fees of $513,396.25.  ECF No. 144-6 at 49.  Plaintiffs do not dispute that the specific billing entries identified by Defendants indicate potentially duplicative work or intra- and inter-office communications.  Instead, they counter that the four firms representing Plaintiffs "worked together and coordinated efforts in the most efficient possible manner."  ECF No. 153 at 15; see also ECF No. 153-1 ¶ 11 ("At Defendants' request, the four firms working as Plaintiffs' counsel worked together in coordinated efforts in the most efficient manner possible, beginning immediately after the filing of the consolidated complaint.  Those efforts included assignments of tasks, regular meetings in which to share workloads, and delegating duties from discovery to drafting pleadings.").

---

[7] Curiously, Ms. Spanier's December 13, 2017 declaration claims a total of $42,218.75 for 48.25 hours spent by her firm between July 28 and September 14, 2017.  ECF No. 178 at 5.  Her September 15, 2017 declaration claimed $38,718.75 – $3,500 less – for the same number of hours in the same period.  ECF No. 153-2 at 2.  The Court does not resolve this discrepancy and presumes the subsequent declaration accurately reports the number of hours claimed by Ms. Spanier.

The Court is not persuaded by Plaintiffs' summary declaration.  For example, five counsel billed for attending a mediation on May 25, 2016.  ECF No. 144-6 at 30.  Putting aside the inconsistencies in the number of hours billed per attorney – ranging from 9.2 to 11.1 hours – counsel have not explained why so many attorneys needed to attend the mediation.  In the cases cited by Plaintiffs, ECF No. 153 at 16 n.10, courts found it reasonable for *two* attorneys to attend a mediation, and in one of those cases, the court explained that the two attorneys "brought different things to the table," with one bringing "mediation experience" and the other "an intimate knowledge of the record."  Toven v. Metro. Life Ins. Co., No. CV06-07260 ABC (RZx), 2009 WL 578538, at *3 (C.D. Cal. Mar. 5, 2009); see also Gurasich v. IBM Ret. Plan, No. 14-cv-02911-DMR, 2016 WL 3683044, at *11 (N.D. Cal. July 12, 2016); Banas v. Volcano Corp., 47 F. Supp. 3d 957, 971 (N.D. Cal. 2014).  Here, there is no similar justification for having five partners attend the mediation, and the Court finds the requested hours to be unreasonable.  The Court will allow time for two partners to have attended the mediation and will therefore reduce the claimed hours by 60%.  At the $700 billing rate charged by four of the five partners, this results in a reduction to the lodestar of $21,546.

Likewise, four counsel billed for attending a December 10, 2015 motion hearing, for a total claimed fee of $2,850.[8]  ECF No. 144-6 at 20.  This was also excessive, and the Court will reduce the claimed amount by half, for a reduction of $1,425 to the lodestar.

On the Court's own review, the majority of the remaining 725.6 hours identified by Defendants refer to intra- and inter-office communications by telephone or email.  While, particularly in a large class action such as this, "some number of intra-office conferences are not only to be expected, but will often result in a savings of attorney time by ensuring that all attorneys on a team are kept apprised of important information about the case as it becomes available," the amount of such communications in this case was excessive.  MacDonald v. Ford Motor Co., No. 13-cv-02988-JST, 2016 WL 3055643, at *4 (N.D. Cal. May 31, 2016).  In

---

[8] Three of the four attorneys included travel time in their billing entries.  The attorney who did not billed 1.5 hours for "ORAL ARGUMENT," ECF No. 144-6 at 20, and the Court therefore calculates the total fee based on 1.5 hours for all four attorneys.

19

MacDonald, for example, the amount billed for intraoffice communication was "approximately 7% of the overall billing." Id. Here, by contrast, the identified 725.6 hours represent nearly 25% of the total number of hours claimed by counsel. "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" Gates, 987 F.2d at 1399 (9th Cir. 1992) (citation omitted). Here, rather than examine individually the 48 pages of billing entries identified by Defendants as duplicative, ECF No. 144-6, the Court finds it reasonable to reduce the claimed 725.6 hours by 50%. See, e.g., Carr v. Tadin, Inc., 51 F. Supp. 3d 970, 983 (S.D. Cal. 2014) (reducing lodestar by "approximately half of the hours billed for intraoffice e-mails, e-mails from ECF, and 6-minute meetings concerning the case's 'strategy' or 'status'"). This results in a reduction to the lodestar of $237,063.12.[9]

### b.    Block Billing

Defendants next request a 20% reduction in the hours claimed by the lawyers at Abbey Spanier, LLP and the Law Office of Geoffrey V. White because they contend that these lawyers engaged in impermissible block billing. ECF No. 144 at 17-18. While Defendants are correct that attorneys at these firms did not separate time entries per day by task and instead billed all tasks for each day in a single entry, see ECF No. 134-4 at 23-37 (Abbey Spanier, LLP); ECF No. 134-5 at 16-44 (Law Office of Geoffrey V. White), they have not identified any instances where such block billing makes it impossible for "the Court to determine the reasonableness of time expended." Garcia v. Resurgent Capital Servs., L.P., No. C-11-1253 EMC, 2012 WL 3778852, at *8 (N.D. Cal. Aug. 30, 2012) (imposing no reduction for block-billed entries). The requested reduction is therefore denied.

In a footnote, Defendants argue that time billed by Abbey Spanier, LLP should be reduced by 20% because the firm billed in quarter-hour, rather than tenth-of-an-hour, increments. ECF No. 144 at 17 n.5. The Ninth Circuit approved such a reduction where "hours were inflated because

---

[9] The five entries for attendance at the May 25, 2016 mediation total $36,420. Deducting this amount, and the $2,850 claimed for attendance at the December 10, 2015 motion hearing, from $513,396.25 yields $474,126.25, half of which is $237,063.12.

counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." Welch, 480 F.3d at 949. Here, however, Defendants have not identified any time entries where quarter-hour billing resulted in an inflation of hours. Consequently, this request is also denied.

### c.     Time Entries of 0.1 Hour

Defendants criticize other of Plaintiffs' counsel for billing in 0.1-hour increments for incremental tasks. ECF No. 144 at 19. They identify 27.2 hours billed in this manner, for a total of $15,577.50. ECF No. 144-10 at 14. "Although 'a one-tenth hour timekeeping practice is generally reasonable' and 'careful review of filings should be encouraged,' billing 0.1 hours for certain practices sometimes requires a reduction. Kalani v. Starbucks Corp., 2016 WL 379623, at *8 (N.D. Cal. Feb. 1, 2016) (reducing by half multiple 0.1 hour time entries for routine docket entries)." Jacobson v. Persolve, LLC, No. 14-cv-00735-LHK, 2016 WL 7230873, at *10 (N.D. Cal. Dec. 14, 2016). In addition, courts in this district are "critical of the practice of billing for multiple .1 hour entries separately where they could be consolidated." Hernandez v. Taqueria El Grullense, No. 12-cv-03257-WHO, 2014 WL 1724356, at *9 (N.D. Cal. Apr. 30, 2014).

Defendants point only to two specific days on which Thomas Sinclair included four 0.1-hour time entries, each of which referenced review of routine court filings. ECF No. 144 at 19 (citing time entries on February 19, 2015, and May 19, 2015). The Court agrees that billing 24 minutes for such work is excessive and reduces the amount billed by half. This results in a reduction to the lodestar of $250. The Court's review of the other entries identified by Defendants reveals that the vast majority do not include multiple 0.1-hour entries by the same attorney on the same date, and such entries could not have been consolidated. Accordingly, the Court does not apply any further reductions to the lodestar for 0.1-hour billing entries.

### d.     Time Spent on Particular Activities

The Court turns next to several specific categories of time on which Defendants contend Plaintiffs spent an unreasonable number of hours.

### i.     Amended Stipulation

First, Defendants argue that it was unreasonable for Plaintiffs to have spent 244.85 hours,

United States District Court
Northern District of California

for a fee of $164,156.25, on negotiating the first amended stipulation of settlement over a two-month period.  ECF No. 144 at 14.  They do not, however, identify any particular time entries as unreasonable, nor do they provide any justification for applying their requested 65% lodestar reduction.  The Court's independent review of the time entries identified by Defendants, ECF No. 144-7, also reveals no obviously unreasonable time entries aside from excessive intra- and interoffice communications.  The Court has already reduced the lodestar for these excessive hours and does not find any further reductions to be appropriate.

### ii.    Travel Time

Next, Defendants challenge billing for approximately 100 hours, for a fee of $68,934.61, for time spent traveling.  ECF No. 144 at 18 & n.6.  "While the Court may in its discretion reduce the fees owed related to travel, the Court may also award travel time in full.  The central inquiry is whether the time sought is reasonable."  Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc., No. C09-04932 SI, 2013 WL 843036, at *7 (N.D. Cal. Mar. 6, 2013) (citation omitted).

The Court has already found unreasonable the attendance of four attorneys at the December 10, 2015 motion hearing and five attorneys at the May 25, 2016 mediation.  The corresponding travel time is also unreasonable, and the Court will disallow the time spent on out-of-town travel by two attorneys for both of these events: travel by Ms. Spanier and Mr. Sinclair for the motion hearing in San Francisco, and travel by Mr. White and Mr. Sinclair for the mediation in New York City.  This results in a reduction to the lodestar of $32,200.  ECF No. 144-9 at 2.[10]

### iii.    Claims Management

Defendants also argue that class counsel's claimed time for managing class members' claims – 100.65 billed hours and 125 anticipated future hours, for a total fee of $126,976.25 – is excessive and unreasonable.  ECF No. 144 at 19.  They ask the Court to reduce this amount by 25% because some of these tasks should have been performed by the separately compensated

_____

[10] The Court has already reduced Ms. Spanier's hourly rate to $700 from $875 and therefore calculates her travel at the reduced rate.  Also, Mr. Sinclair block-billed 2.5 hours for travel time and attendance at the December motion hearing.  The Court already considered the 1.5 hours spent at the hearing and only counts as travel time 1.0 hours of Mr. Sinclair's December 10, 2015 billing entry.

settlement administrator.  Id. at 19-20.  However, Defendants cite no authority for the proposition that class counsel cannot recover fees for such tasks as communicating with the settlement administrator or responding to inquiries from class members.  To the contrary, the Court expects that at least some communication of this kind will customarily take place as part of class counsel's representation.  Moreover, the Court is satisfied by its review of the time entries identified by Defendants, ECF No. 144-11, that the claimed time is reasonable, and no reduction to the lodestar is appropriate.

### 3.  Lodestar Summary

Incorporating all of the above reductions, the lodestar is reduced from $1,806,471.00 to $1,446,786.88.

### 4.  Multiplier or Reduction

Plaintiffs request a lodestar multiplier of 1.25, ECF No. 134 at 26-29, and Defendants argue that the lodestar should be reduced based on their characterization of Plaintiffs' limited success, ECF No. 144 at 8-13.  An adjustment to the lodestar is appropriate only in "rare and exceptional cases, . . . based on facts not subsumed in the initial lodestar calculation."  Welch, 480 F.3d at 946.  "Factors that cannot serve as independent bases for adjusting fee awards are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained."  Miller v. Los Angeles Cty. Bd. of Educ., 827 F.2d 617, 621 n.4 (9th Cir. 1987) (citing Blum, 465 U.S. at 898-900; Jordan, 815 F.2d at 1262 n.6).  In addition, a statutory fee award under ERISA cannot be enhanced based on the fees' contingent nature.  Cann v. Carpenters' Pension Tr. Fund for N. Cal., 989 F.2d 313, 317-18 (9th Cir. 1993). Application of a multiplier must be  "supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high."  Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotation marks and citations omitted).

The Court cannot make such findings here.  Class counsel's arguments regarding the time spent litigating this case, including their characterization of the claims as "novel and difficult," ECF No. 134 at 27, are already "subsumed in the initial lodestar calculation."  Welch, 480 F.3d at

946; see also Miller, 827 F.2d at 621 n.4.  The Court also disagrees with Defendants'
characterization of Plaintiffs' success as so limited as to require a lodestar reduction.  The factor
exerting the greatest downward pressure on the class' recovery was the Fund's financial condition,
not the strength of Plaintiffs' legal arguments or the quality of their advocacy.  Moreover,
although Plaintiffs did not obtain all of the results they sought in this litigation, the Court has
already found the settlement terms to be fair, reasonable, and adequate.  The Court finds neither an
upward nor a downward multiplier to be appropriate.

### 5. Costs

Regarding costs, class counsel initially provided only "categories of expenses incurred and
the total amounts paid," which is insufficient to allow a court to determine the reasonableness of
claimed expenses.  Wren v. RGIS Inventory Specialists, No. C-06-05778 JCS, 2011 WL 1230826,
at *30 (N.D. Cal. Apr. 1, 2011).  Pursuant to the Court's order, ECF No. 162, Plaintiffs filed
supplemental documentation of their claimed costs, ECF Nos. 164, 164-1 to 164-5.  The Court
finds this supplemental documentation, along with the additional declaration filed by Mr. Sinclair
at ECF No. 179, to be sufficient.

Defendants argued in their opposition that Plaintiffs are entitled only to costs that are
taxable under 28 U.S.C. § 1920 as part of the statutory fee award.  ECF No. 144 at 23-24.
However, they conceded this argument at the fairness hearing.  Although "costs of action" in 29
U.S.C. § 1132(g)(1) refers only to taxable costs, Agredano v. Mut. of Omaha Cos., 75 F.3d 541,
544 (9th Cir. 1996), non-taxable costs are recoverable as part of the "reasonable attorney's fee"
when "it is the prevailing practice in a given community for lawyers to bill those costs separately
from their hourly rates," Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland
Ins. Co., 460 F.3d 1253, 1258 (9th Cir. 2006) (internal quotation marks and citation omitted).

Defendants now contest only two categories of costs claimed by Plaintiffs: expert witness
fees and the expenses of the settlement administrator.  Defendants cite Agredano as barring the
recovery of expert witness fees, but that case holds only that such fees are not recoverable as
taxable costs under 28 U.S.C. § 1920.  Nonetheless, "'reasonable attorney's fees' do not include
costs that, like expert fees, have by tradition and statute been treated as a category of expenses

distinct from attorney's fees." Redland Ins. Co., 460 F.3d at 1258; see also Bd. of Trustees v. Piedmont Lumber & Mill Co., No. 13-cv-03898-HSG, 2016 WL 4446993, at *3 (N.D. Cal. Aug. 24, 2016) ("The Court finds that the requested expenses are reasonable and recoverable, except for the expert witness fees, which are not compensable in an ERISA case."). Plaintiffs cite only one case, which did not arise under ERISA, in which the court awarded expert fees. ECF No. 134 at 30. That case's discussion on costs reads, in its entirety:

> Class counsel seek to recover the costs of litigation as well as their fees. They request nearly $200,000 in expert and mediation fees as well as $81,390.38 in general litigation costs. It appears to the Court that the costs requested are reasonable in light of the complexity of the litigation and the number of counsel involved, and are therefore approved by the Court.

Linney v. Cellular Alaska P'ship, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997). The Court does not find this case persuasive in light of its cursory discussion and the more recent and ERISA-specific authority cited above. The other three cases cited by Plaintiffs, ECF No. 153 at 19-20, support an award of non-taxable costs as part of a reasonable attorneys' fee, but expert fees were not awarded – or addressed – in any of those cases. Redland Ins. Co., 460 F.3d at 1258-59 (allowing recovery in ERISA case of "reasonable charges for computerized research"); Grove v. Wells Fargo Fin. Cal., Inc., 606 F.3d 577 (9th Cir. 2010) (holding that Fair Credit Reporting Act allows non-taxable costs, and remanding to district court to consider whether to award claimed non-taxable costs, which included "the cost of postage, facsimiles, travel, mediation services, and video conferencing services used in depositions"); Langston v. N. Am. Asset Dev. Corp. Grp. Disability Plan, No. C 08-02560 SI, 2010 WL 330085, at *8 & n.12 (N.D. Cal. Jan. 20, 2010), on reconsideration, 2010 WL 1460201 (N.D. Cal. Apr. 12, 2010) (awarding "money spent on Westlaw and PACER fees, faxing/copying/scanning, and postage" but noting that the plaintiffs had withdrawn their request for $600 in expert fees). Accordingly, the Court denies Plaintiffs' request for $13,982.05 in expert fees. ECF No. 164 at 3.

None of the cases cited by either party considers whether the expenses of a settlement administrator should be included as part of a "reasonable attorneys' fee," and the Court is aware of no authority that has reached this question. However, courts, including this one, have awarded

settlement administrator expenses as part of "litigation costs." E.g., Deatrick v. Securitas Sec. Servs. USA, Inc., No. 13-cv-05016-JST, 2016 WL 5394016, at *7 (N.D. Cal. Sept. 27, 2016). In addition, the terms of the settlement agreement explicitly allow for recovery of such expenses: "Class counsel may apply to the Court no later than fifty-six (56) days prior to the Fairness Hearing for an award of attorneys' fees and expenses, *including for the Settlement Administrator's fees and expenses.*" ECF No. 125 at 40. The Court therefore denies Defendants' request to strike the settlement administrator's expenses from Plaintiffs' fee award.

Finally, the Court reduces the amount of costs Plaintiffs claim for travel. The Court has already found unreasonable the time claimed by Ms. Spanier and Mr. Sinclair for the December 10, 2015 motion hearing, and by Mr. White and Mr. Sinclair for the May 25, 2016 mediation, and the Court therefore does not award related travel expenses. These expenses total $7,480.47. ECF No. 164-1 at 46-47, 49 (Spanier); ECF No. 164-3 at 4, 10, 13, 17 (White); ECF No. 164-4 at 67-69, 76-80 (Sinclair). In addition, Mr. Sinclair flew first or business class on two other trips, ECF No. 179 ¶ 2, and those expenses, totaling $3,225.30, will also be disallowed as unreasonable.[11] ECF No. 164-4 at 70-71, 81-84. As a result, Plaintiffs' award of costs is reduced by $10,705.77.

In sum, the Court reduces Plaintiffs' requested award of costs from $372,841.39 to $348,153.57. This includes the settlement administrator's estimated $29,000 in costs through the initial distribution, ECF No. 164-5 ¶ 4, so the actual amount of costs paid by Defendants may vary.

### B.    Common Fund

Plaintiffs in this case request an additional fee award out of the common fund. "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. In re Bluetooth, 654 F.3d at 942. "Because the

---

[11] This amount includes the $661.80 that Mr. Sinclair agreed was non-reimbursable because he received a refund for a canceled flight. ECF No. 179 ¶ 3. He did not do so until after the Court inquired about a potentially duplicative claim. ECF No. 177 at 1.

benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id. "Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. (citing Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)). However, the benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." Six (6) Mexican Workers, 904 F.2d at 1311. When considering whether to depart from the 25% benchmark, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047-50 (9th Cir. 2002)). "[T]he most critical factor [in determining appropriate attorneys' fee awards] is the degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).

Comparing a percentage fee award to the lodestar "provides a check on the reasonableness of the percentage award." Vizcaino, 290 F.3d at 1050. Percentage awards in the range of one to four times the lodestar are common. Id. at 1051 n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the range of 1.0 to 4.0 and 54% in the 1.5 to 3.0 range, and citing In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quoting 3 Newberg § 14.03 at 14-15))). "[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." In re Bluetooth, 654 F.3d at 942.

### 1.      Amount of Common Fund

The parties dispute the amount that should be used as the basis for calculating a percentage fee award.  Plaintiffs believe that the fee award "should be based on the totality of funds made available for the benefit of the class, regardless of whether class members file claims."[12]  ECF No. 164 at 4.  They consider the value of the fund to be the $12,168,789.21 figure contained in Defendants' CAFA notice.  Id. at 3.  Defendants argue that this amount was merely an estimate, and that any fee award should be based on the actual value of the common fund.  ECF No. 170.

The Court agrees with Defendants.  As Defendants correctly observe, "this is *not* a settlement in which the parties bargained in advance for a common fund under the agreement or set a maximum liability for the Pension Fund.  Rather, the common fund . . . is precisely the sum total of the amount actually deposited by the Pension Fund under the settlement formula."  Id. at 2 n.1 (emphasis in original).  That is, a common fund of $12,168,789.21 never existed; instead, the settlement agreement requires Defendants to pay into the common fund only those amounts due to class members under the terms of the agreement, and the final value of the fund could have been higher or lower than the estimate contained in the CAFA notice.[13]  ECF No. 125 at 36-37.  This characteristic distinguishes this case from the cases cited by Plaintiffs in which defendants' potential liability was fixed at a set amount.  See Boeing v. Van Gemert, 444 U.S. 472, 479 & n.5 (1980) (judgment to the class was for "a sum certain": a "fixed recovery" that was not "contingent upon the presentation of individual claims"); Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997) (case involved a "$4.5 million settlement fund" and is further distinguishable because, unlike in this case, the settlement agreement included a provision that "the class attorneys would seek to recover fees based on the entire $4.5 million fund"); Lopez v. Youngblood, No. CV-F-07-0474 (DLB), 2011 WL 10483569, at *2-3, *13 (E.D. Cal. Sept. 2, 2011) (settlement agreement included a cap on payouts to class members and, as a further

---

[12] Plaintiffs raised this issue only in their supplemental report to the Court filed in response to the Court's order at the fairness hearing.  The Court did not invite supplemental legal briefing but will nonetheless consider the merits of Plaintiffs' argument.

[13] If the notice under- rather than over-estimated the class recovery, the Court strongly doubts that Plaintiffs would have requested a percentage of the estimated recovery rather than the actual.

distinction from this case, a fixed attorneys' fee award paid in addition to, rather than deducted from, payments to class members). The Court will base the percentage fee award on the actual value of the common fund: $10,225,006.20. ECF No. 174 at 2.

### 2. Percentage Award

Plaintiffs' counsel seeks a fee award of 33% of the common fund. As the Court previously advised, it "is unlikely to ignore the Ninth Circuit's instruction that only 'special circumstances' justify a departure" from the 25% benchmark. ECF No. 123 at 12 (quoting Six (6) Mexican Workers, 904 F.2d at 1311). No such special circumstances are present here. Although the Court finds the settlement fair and reasonable, the results in this case are not exceptional. Nor does the Court find this litigation especially risky or complex. In addition, the three-year length of this litigation – and the resultant financial burden placed on Plaintiffs' counsel by the contingent nature of the fee award – was not unusually protracted. Notwithstanding the cases cited by Plaintiffs in which courts have awarded 28-33.3% of the common fund as a fee award, ECF No. 134 at 15, the Court is not persuaded that special circumstances warrant a departure from the 25% benchmark in this case. Cf. Six (6) Mexican Workers, 904 F.2d at 1311 (finding no departure from the 25% benchmark where "the litigation lasted more than 13 years, obtained substantial success, and involved complicated legal and factual issues").

Class counsel is entitled to 25% of the common fund, or $2,556,251.55, in attorneys' fees. Cross-checking this amount against the $1,446,786.88 lodestar the Court has already calculated yields a multiplier of 1.77, which is within the range of reasonable common fund fee awards. $1,446,786.88 will be paid by Defendants (or the Fund's insurance policy) as statutory fees, leaving $1,109,464.67 to come out of the common fund.

## IV. INCENTIVE AWARDS

Finally, Plaintiffs request incentive awards of $1,000 to each of the eleven named class representatives. ECF No. 134 at 30-31. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958-959 (internal citation

omitted). Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." Staton, 327 F.3d at 977 (citation and internal quotations and alterations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013). "To determine the reasonableness of an incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards." Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014). An award of $5,000 "is presumptively reasonable." Id.

Plaintiffs argue that "the class representatives diligently kept informed of the litigation, communicated with Class Counsel as necessary to assist with the effective prosecution of the case, and provided documents and information, as needed." ECF No. 134 at 31. Defendants do not oppose the proposed $1,000 incentive awards, and no class member has objected to them. The requested $1,000 is below the presumptively reasonable $5,000, and the requested awards in aggregate represent less than 0.1% of the settlement fund. The Court finds the requested incentive awards to be reasonable.

## CONCLUSION

The Court grants final approval of the proposed settlement and grants in part and denies in part Plaintiffs' motion for attorneys' fees, costs, and incentive awards. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: December 28, 2017

_____
JON S. TIGAR
United States District Judge